## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANE DOE,<br><br>　　　　　　Plaintiff,<br><br>　　　　v.<br><br>CITY OF PHILADELPHIA;<br>INDEPENDENCE BLUE CROSS;<br>FIREFIGHTERS & PARAMEDICS LOCAL<br>22, FIREFIGHTERS & PARAMEDICS<br>LOCAL 22 FUND, FIREFIGHTERS &<br>PARAMEDICS LOCAL 22 HEALTH PLAN;<br>FIREFIGHTERS & PARAMEDICS LOCAL<br>22 TRUST,<br><br>　　　　　　Defendants | Case No. _____ |

## COMPLAINT

Plaintiff, Jane Doe, by and through her undersigned counsel, Justin Robinette, Esquire, hereby submits and files the instant Complaint against Defendants, City of Philadelphia; Independence Blue Cross; Firefighters & Paramedics Local 22; Firefighters & Paramedics Local 22 Fund; Firefighters & Paramedics Local 22 Health Plan, and Firefighters & Paramedics Local 22 Trust, averring in support thereof, as follows:

## I.　　INTRODUCTION:

1.　　Plaintiff is a firefighter—a Battalion Chief—who has worked for Defendant, the City of Philadelphia, as a long-time, faithful employee for approximately twenty-eight (28), going on twenty-nine (29) years, of employment.  Plaintiff is a well-respected, active member in good standing of her local union, the Firefighters & Paramedics Local 22.  Despite her contributions to

this City, over the course of almost three (3) decades of employment, Defendants intentionally discriminated against Plaintiff on the basis of her gender identity and continue to cause her harm. Defendants, the Firefighters & Paramedics Local 22 and/or the City of Philadelphia operate a categorical plan exclusion for gender-affirming care and treatment, including excluding a series of procedures known as Facial Feminization Surgery ("FFS"), for transgender women who suffer from gender dysphoria ("GD"), in the Defendants' self-funded employer-sponsored health plan. Defendant, Independence Blue Cross, underwrites and administers the plan including the aforementioned discriminatory plan exclusion.  Despite Plaintiff's request for pre-authorization/certification, her first-level appeal/grievance, and even her second-level appeal grievance, Defendants refused to provide Plaintiff the requested coverage for facial feminization surgery ("FFS").

Defendant, Independence Blue Cross, refused to provide Plaintiff the requested coverage even in the face of two (2) similar lawsuits seeking FFS as a medically necessary and covered service, and in the face of a reported Federal district-court decision of a Senior United States District Judge, the Hon. Timothy J. Savage, in *Doe v. Independence Blue Cross*, No. 23-1530, ___ F. Supp. 3d ___, 2023 WL 8050471, at *5 (E.D. Pa. Nov. 21, 2023) (Savage, J.) ("The medical necessity determination must be made considering the insured's gender identity (how the insured perceived her appearance as incongruent with her female gender identity), not her gender expression.  Nonetheless, IBX based its medical necessity determination on markers of gender expression, that is, how she was perceived by others.  IBX applied societal understandings of what a 'normal' woman looks like and compared Ms. Doe's appearance to those norms. What matters is how Ms. Doe identified herself.").

2

Defendants made several pretextual requests and forced Plaintiff to face unnecessary obstacles to secure coverage from Defendants for medically-necessary gender-affirming care and treatment, which should have been covered in the first instance, including forcing Plaintiff to expend time, effort, and money researching and securing counsel to file an appeal on her behalf. Defendants then forced Plaintiff to submit a new pre-authorization/certification request despite Plaintiff previously submitting a pre-authorization/certification request, which was previously *denied* on account of discrimination by the Defendants.

In conclusion, Plaintiff, Ms. Doe, was forced to maintain natal sex characteristics with which she no longer identified by virtue of the Defendants' callous and discriminatory acts committed against her.  Ms. Doe found it difficult to function at work and in public and is constantly misgendered because, without FFS, she is read as not passing or not conforming to the sex assigned to her at birth.  She became suicidal and considered ending her life.  For purposes of making the instant coverage determination, however, what mattered was how Ms. Doe had identified herself.  *See Doe v. Independence Blue Cross*, *supra*, ___ F. Supp. 3d ___, 2023 WL 8050471, at *5.  Plaintiff therefore seeks compensatory and punitive damages against Defendants. Plaintiff also seeks coverage for FFS, hair transplant, and related procedures, that are medically-necessary and life-saving gender-affirming treatments, moving forward, in the form of future medical expenses.

## II.  **THE PARTIES:**

2.      Plaintiff, Jane Doe ("Plaintiff" or "Ms. Doe") is a citizen and resident of Philadelphia, Pennsylvania, residing at

████████████████████████████████████████ Plaintiff has redacted her name and

address from the pleadings consistent with the Plaintiff's Motion to Proceed Anonymously filed on this same date.

3.      Defendant, City of Philadelphia (hereinafter "City of Philadelphia" or "the City") was, at all times relevant hereto, Plaintiff's employer, located at 1515 Arch Street, Suite 15, Philadelphia, PA 19102.

4.      Defendant, Independence Blue Cross (hereinafter "Independence Blue Cross" or "IBX"), is a health insurance company with its headquarters and principal place of business located at 1901 Market Street, Philadelphia, PA 19103.

5.      Defendant, Firefighters & Paramedics Local 22, is a labor organization, of which, at all times relevant hereto, Plaintiff was a member, and which maintained a headquarters and principal place of business located at 415 N. 5th Street, Philadelphia, PA 19123.

6.      Defendant, Firefighters & Paramedics Local 22 Health Plan (hereinafter "the Plan"), is believed and averred to be the name of the health benefit plan, established according to the Employee Retirement Income Security Act ("ERISA"), with respect to Plaintiff's employer-sponsored health insurance benefits, with a headquarters and principal place of business located at 415 N. 5th Street, Philadelphia, PA 19123.

7.      Defendants, Firefighters & Paramedics Local 22 Fund, Firefighters & Paramedics Local 22 Health Plan, and/or Firefighters & Paramedics Local 22 Trust, is a fund, trust, and/or plan controlling the benefits at issue, which were wrongfully denied, with a headquarters and principal place of business located at 415 N. 5th Street, Philadelphia, PA 19123.

### III.  **JURISDICTION AND VENUE:**

8.      This Court has jurisdiction over the parties and claims pled herein pursuant to 28 U.S.C.

§ 1331.

9.     This Court has supplemental jurisdiction over related state law claims pled herein

       pursuant to 28 U.S.C. § 1367(a).

10.    This Court has jurisdiction over Defendants because Defendants' contacts with this state

       and judicial district are sufficient for the exercise of jurisdiction over Defendants to comply

       with traditional notions of fair play and substantial justice, satisfying the standard set forth

       by the United States Supreme Court in <u>International Shoe Company v. State of Washington</u>,

       326 U.S. 310 (1945), and its progeny.

11.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-

       5(f)(3).

12.    At all times relevant hereto, Defendants each employed more than five hundred (500)

       persons for each working day in each of twenty (20) or more calendar weeks in the current

       or preceding calendar year.

## IV.   <u>MATERIAL FACTS</u>

13.    Ms. Doe, at all times relevant hereto, was employed by Defendant, City of

       Philadelphia, as a firefighter.

14.    Ms. Doe is a Battalion Chief.

15.    Ms. Doe provided valued contributions to Defendant, City of Philadelphia, over

       the course of more than approximately twenty-eight (28) years she has been

       employed with the Defendant, City of Philadelphia.

16.    Ms. Doe came out during her employment with Defendant, City of Philadelphia,

       as transgender.

17.    Ms. Doe came out during her employment with Defendant, City of Philadelphia, as a transgender woman.

18.    "Gender identity" is a clear and well-established medical concept that refers to one's internal sense of oneself as having a particular gender or no gender.

19.    Although many people who are designated male at birth based on external anatomy identify with the male gender, there are also people who do not identify with the sex that was assigned to them at birth. Transgender women are women who were assigned "male" at birth but have a female gender identity and transgender men are men who were assigned "female" at birth but have a male gender identity.

20.    There are people who are transgender who experience feelings of incongruence between their gender identity and the sex they were assigned at birth, and experience distress as a result of that incongruence, which are symptoms of gender dysphoria ("GD").

21.    Gender dysphoria is a serious medical condition codified in the *Diagnostic and Statistical Manual of Mental Disorders 5* (DSM-5) and *International Classification of Diseases* (ICD-10).

22.    GD is a medical and therapeutic diagnosis "associated with clinically significant distress or impairment in social, occupational, or other important areas of functioning" for a person who is transgender. *See Diagnostic and Statistical Manual of Mental Disorders*, 5th Ed. ("DSM-V" at 302.85); *see also* Coleman, E., *et al*., Standards of Care for the Health of Transgender and Gender Diverse People, Version 8, *International Journal of Transgender Health*, *23*(S1), S1-S260 (2022).

23.    Various medical procedures are available to assist transgender women to ensure a body

that is more in congruence with their gender identity. These procedures may also alleviate gender dysphoria.

24.     The widely accepted standards of care for treatment of gender dysphoria are published by the World Professional Association for Transgender Health ("WPATH"). The WPATH Standards of Care have been recognized as the authoritative standards of care by leading medical organizations, the U.S. Department of Health and Human Services, Federal courts, and the Pennsylvania Department of Human Services.

25.     Under the WPATH standards, medically necessary treatment for gender dysphoria may require facial feminization surgery ("FFS") and related procedures.

26.     According to every leading major medical organization and the overwhelming consensus among medical experts, treatment of gender dysphoria, including surgical procedures such as FFS procedures, are effective, safe, and medically necessary when clinically indicated to alleviate gender dysphoria.

27.     At all times relevant hereto, Defendant, City of Philadelphia, was the Plaintiff's employer responsible for the provision of benefits to the Plaintiff including employer-sponsored healthcare benefits, and is required by City, State, and Federal non-discrimination laws to make insurance coverage available to individuals who are transgender, gender non-conforming, and/or who are diagnosed with gender dysphoria ("GD"), on an equal and non-discriminatory basis.

28.     At all times relevant hereto, Plaintiff was clinically diagnosed with gender dysphoria ("GD").

29.     The substantial limitation on Doe's interaction with others is characterized on a regular

basis by severe problems in primarily social and occupational functioning of which Ms. Doe was diagnosed with on account of her gender dysphoria ("GD").

30.   Ms. Doe was clinically diagnosed with GD and has clinically significant distress associated with being transgender.

31.   At all times relevant hereto, Defendant, Independence Blue Cross, issued and had in place for the Plaintiff a policy of health insurance (hereinafter "the Medical Policy," "Medical Policy Bulletin," or "the subject Policy") to insure Plaintiff for health insurance. At all times relevant hereto, Defendant, Independence Blue Cross, insured Plaintiff for expenses and costs related to her healthcare.  A true and correct copy of the "Commercial Medical Policy," or "Medical Policy Bulletin," for "Treatment of Gender Dysphoria," is attached hereto as Exhibit "C."

32.   At all times relevant hereto, Plaintiff complied with all terms and conditions of the subject Policy.

33.   Ms. Doe submitted a preclearance or preauthorization request to the Defendants seeking the Defendants' approval for the coverage of a series of surgical facial procedures known as "Facial Feminization Surgery," or "Facial Feminization Surgeries," abbreviated "FFS," which included specifically for Ms. Doe a rhinoplasty, septoplasty, septorhinoplasty, dermabrasian for rhinophyma, forehead reduction, repair of brow ptosis (supraciliary, mid-forehead or coronal approach), and Ms. Doe will need hair transplant procedures.

34.   Ms. Doe sought coverage for services for gender-affirming care and treatment from the Defendants in an attempt to alleviate Ms. Doe's gender dysphoria.

35.     Following Defendants' unlawful and discriminatory denial of Plaintiff's request for pre-authorization/preclearance for FFS, Plaintiff was forced to expend time and effort, and unnecessary expense, appealing the decision and gathering documentation in support of her claim, which Defendants knew to be a legitimate claim, and yet Defendants unlawfully denied the claim on account of discrimination based on sex/gender, gender identity, gender stereotyping, and/or disability (gender dysphoria).

36.     Despite Plaintiff providing documentation of Plaintiff's condition from Plaintiff's psychiatric nurse, Plaintiff's first-level appeal/grievance was unlawfully denied on account of discrimination due to Plaintiff's sex/gender, gender identity, gender stereotyping, and/or disability (gender dysphoria).

37.     Plaintiff was forced to expend time, effort, and unnecessary expense, submitting a second-level appeal/grievance, which Defendants again arbitrarily denied, on account of discrimination due to Plaintiff's sex/gender, gender identity, gender stereotyping, and/or disability (gender dysphoria).

38.     Defendants should be regarded as having knowledge and/or recklessly disregarding Ms. Doe's Federally-protected rights to be free from discrimination on account of Ms. Doe's sex/gender, gender identity, based on gender stereotyping, and/or based on Ms. Doe's disability (gender dysphoria), by denying Ms. Doe medically-necessary treatments to alleviate her gender dysphoria.

39.     Defendants forced Plaintiff to go through an arduous process to secure coverage for FFS and related procedures, in the hope that Plaintiff would simply give up and go away, when Defendants knew and/or recklessly disregarded that their actions constituted

illegal sex stereotyping and violated Federal, state, and City law.

40.    For example, as recently as in or around late December 2023, Defendants denied

Plaintiff's legitimate claim for gender-affirming care and treatment, and specifically

noted, on the denial, that the request was sought, in part, for "**Gender Affirming**

**Interventions**" (bold in original).  Defendants denied the claim anyway.  Defendants

had knowledge and/or recklessly disregarded Ms. Doe's Federally-protected rights to be

free from discrimination and, therefore, Plaintiff is entitled to punitive damages against

Defendants.

41.    Defendants had knowledge that their actions violated the law but recklessly disregarded

the same, because Defendants denied Plaintiff's legitimate claim by applying their

cosmetic-surgery exclusion in an intentionally discriminatory manner, to deny and

exclude Plaintiff from coverage for gender-affirming care and treatment solely on

account of her sex/gender, gender identity, gender stereotyping, and/or based on

Plaintiff's disability (gender dysphoria).

42.    Defendants stated that they were denying Plaintiff's request for pre-authorization on

account of the fact that Plaintiff was attempting to "improve her appearance," which is

incorrect and discriminatory, as Plaintiff is not attempting to "improve her appearance"

but is instead attempting to secure medically-necessary treatment for her gender-

dysphoria condition.

43.    Stating that a transgender woman who suffers from GD is attempting to "improve her

appearance" applies societal notions of what a traditionally female face is, and compares

Ms. Doe to those notions.  What matters is how Ms. Doe identifies her gender identity.

44.   Stating that a transgender woman who suffers from gender dysphoria is attempting to "improve her appearance" is discriminatory based on sex.

45.   To add insult to injury, stating that a transgender woman who suffers from GD is attempting to "improve her appearance," not only applies societal notions of what a traditionally feminine face looks like to Ms. Doe, for purposes of having Ms. Doe compared against those standards, but further suggests that Ms. Doe does not meet society's expectation for a traditionally feminine face (*i.e.*, needs improvement). Because this is allegedly, according to Defendants, the very reason that Plaintiff is seeking FFS, in the first instance, to bring her into conformity with society's stereotyped expectation for a female face, Defendants' acts are contradictory and inconsistent and should be regarded as discriminating against Ms. Doe intentionally, to avoid paying her legitimate claim.  Defendants' actions in this regard should also be regarded as being taken with knowledge that their actions violated the law, and/or in reckless disregard of whether their actions violated the law, further warranting the imposition of punitive damages.

46.   Requiring a transgender person to show that they "fall outside the broad range of normal for the female gender" to be covered, and then to deny another transgender person coverage because they are seeking to "improve appearance," is contradictory, and if applied to the same claimant, puts the person in a double-bind as they cannot meet both requirements at the same time, further suggesting that Defendants' intent in discriminating against the transgender community is to avoid paying the claim from the transgender or gender non-conforming person entirely.  Defendants acted with

knowledge and/or recklessly disregarded Ms. Doe's Federally protected rights because Defendants did not want to pay Ms. Doe's legitimate claim warranting the imposition of punitive damages against Defendants.

47.  FFS is by definition reconstructive surgery and a medical necessity for women like Ms. Doe, and it is discriminatory to suggest otherwise, or that she is simply seeking to improve her appearance.

48.  Ms. Doe has spent years of her life presenting herself in a manner that is not her authentic self and is now age 55, and has been subjected to overt discrimination by Defendants in her attempts to secure for herself features that are more in congruence with her gender identity.

49.  Defendants have required Ms. Doe to maintain sex characteristics of her sex assigned at birth with which she no longer identifies which has caused Ms. Doe to consider committing suicide.

50.  Defendants' discrimination has exacerbated Ms. Doe's gender-dysphoria disability and caused Ms. Doe psychological and emotional distress for which she seeks compensatory damages.

51.  According to United States District Judge Timothy J. Savage's recent Opinion in *Doe v. Independence Blue Cross*, No. 23-1530, ___ F. Supp. 3d ___, 2023 WL 8050471, Dkt. 41 (E.D. Pa. Nov. 21, 2023) (Savage, J.), which appears to be reported, and therefore binding and precedential in the Eastern District of Pennsylvania, the medical-necessity determination must be made based on the claimant's internal sense of their gender—their gender identity—not on external markers of gender—their gender expression.  *See Doe*

*v. Independence Blue Cross*, No. 23-1530, ___ F. Supp. 3d ___, 2023 WL 8050471, at

*5 (E.D. Pa. Nov. 21, 2023) (Savage, J.) ("The medical necessity determination must be

made considering the insured's gender identity (how the insured perceived her

appearance as incongruent with her female gender identity), not her gender expression.

Nonetheless, IBX based its medical necessity determination on markers of gender

expression, that is, how she was perceived by others. IBX applied societal

understandings of what a 'normal' woman looks like and compared Ms. Doe's

appearance to those norms. What matters is how Ms. Doe identified herself.").

52.    When Plaintiff contacted a representative from the Plan, to inquire about the lack of

coverage for gender-affirming care and treatment, a Plan representative stated that "the

Plan has an exclusion," or words to that effect, despite the fact that Defendants hold

themselves out to the public as insuring transgender and gender non-conforming

individuals on an equal and non-discriminatory basis.

53.    Defendants discriminated against Ms. Doe by refusing to extend insurance coverage to

Ms. Doe for facial feminization surgeries ("FFS") and related procedures as part of the

Defendants' employer-sponsored health plan, administered and underwritten by

Defendant, Independence Blue Cross.

54.    Under the Medical Policy Bulletin of the Defendants, relating to the treatment of gender

dysphoria, a clear "functional impairment" included impairments in social functioning

and occupational functioning, as "functional impairment" was defined in Defendant's

policy.  See Medical Policy Bulletin, DOE_IBC_000001 - DOE_IBC_000005, and

attached hereto as Ex. "D," Bates DOE_IBC_000003, ECF p. 4 ("Clinically significant

distress or impairment in social, school, or other important areas of functioning").

55.    Plaintiff's impairments in social and occupational functioning were functional in nature and were clearly and plainly covered under the Plan, therefore, benefits were wrongfully denied by Defendants.

56.    Defendants did not apply the "functional impairment" component of the Policy appropriately or correctly in Plaintiff's case.  *See also Doe v. Independence Blue Cross*, No. 23-1530, ___ F. Supp. 3d ___, 2023 WL 8050471, at *2, n. 26 (E.D. Pa. Nov. 21, 2023).

57.    Plaintiff's functional impairments consisted of functional impairments in social and occupational functioning.

58.    Plaintiff's impairments caused her to be unable to function in society.

59.    Plaintiff's impairments caused her to be unable to work without reasonable accommodation.

60.    Plaintiff's gender identity was known to claims agents and representatives of Defendant, Independence Blue Cross, but despite Defendants' knowledge of Plaintiff's gender identity, Defendants nevertheless included in written correspondence to Plaintiff a name that was not Plaintiff's preferred name, in most or all correspondence directed to Plaintiff by Defendant, Independence Blue Cross.

61.    Defendant, Independence Blue Cross, did not abide by its own stated policies of non-discrimination in the Plaintiff's case, and do not abide by their own policies of non-discrimination with respect to people who are transgender who have gender dysphoria, therefore the Defendants are discriminating against the Plaintiff and other people who

are transgender.

62.   Defendant, Independence Blue Cross's, policies provide, in pertinent part, which is not

an adequate policy, but which, nevertheless, Defendants have violated, to wit:

> The Member has the right to receive health care services without discrimination
> based on race, ethnicity, age, mental or physical disability, genetic information,
> color, religion, gender, national origin, source of payment, sexual orientation, or
> sex, including stereotypes and gender identity, for Medically Necessary health
> services made available on the same terms for all individuals, regardless of sex
> assigned at birth, gender identity, or recorded gender; Based on an individual's
> sex assigned at birth, gender identity, or recorded gender, if it is different from the
> one to which such health service is ordinarily available; Related to gender
> transition if such denial or limitation results in discriminating against a
> transgender individual.

63.   Defendants' decision was taken in conscious or reckless disregard of Plaintiff's

Federally-protected rights.

64.   Defendants' decision to deny coverage to Ms. Doe for FFS surgeries constitutes illegal

discrimination against her on account of her being transgender, based on her gender

dysphoria, and/or on the basis of impermissible gender stereotypes.

## V.   CLAIMS FOR RELIEF

### COUNT I:
### DISCRIMINATION BASED ON SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ("TITLE VII"), 42 U.S.C. § 2000*e*, et seq. (PLAINTIFF, JANE DOE v. DEFENDANTS, CITY OF PHILADELPHIA, INDEPENDENCE BLUE CROSS, FIREFIGHTERS & PARAMEDICS LOCAL 22, FIREFIGHTERS & PARAMEDICS LOCAL 22 FUND, and FIREFIGHTERS & PARAMEDICS LOCAL 22 HEALTH PLAN)

65.   Ms. Doe restates and realleges all previous paragraphs as though fully set forth here.

66.   The acts and omissions described above discriminate on the basis of sex in violation of

Title VII of the Civil Rights Act of 1964 ("Title VII").

67.     Defendants intentionally discriminated against Ms. Doe and subjected Ms. Doe to unequal terms, conditions, benefits, and privileges of her employment, by denying or excluding coverage for facial feminization surgeries and related procedures as covered services when medically necessary as gender-affirming care and treatment, from Defendant, City of Philadelphia's, self-funded employer-sponsored health plan ("the Plan").

68.     Defendant, City of Philadelphia, funded the Plan.

69.     Additionally, "employer" as it is defined and used in Title VII is sufficiently broad to encompass any party who significantly affects access of any individual to employment opportunities, compensation, terms, conditions, privileges, or benefits, of which health insurance benefits are included.

70.     It is believed and therefore averred that Defendants, City of Philadelphia, Independence Blue Cross, Firefighters & Paramedics Local 22, Firefighters & Paramedics Local 22 Fund, and Firefighters & Paramedics Local 22 Health Plan, exercised extensive control over benefits, which is an important aspect of the employment relationship.

71.     Defendants exercised control over the coverage of FFS procedures, and did not permit coverage of FFS procedures based on gender stereotyping, discrimination based on sex, and/or discrimination based on gender identity.

72.     Defendants discriminated against Ms. Doe on the basis of Ms. Doe's gender identity, on the basis of Ms. Doe's gender, and based on gender stereotyping, by wrongfully denying health insurance coverage to Ms. Doe for FFS and related procedures.

73.    Defendants rejected coverage for the requested procedures calling them cosmetic and not medically necessary when FFS procedures are, in fact, medically necessary and not cosmetic for individuals like Plaintiff who have been diagnosed with gender dysphoria.

74.    Defendants denied coverage to Plaintiff on the basis that Plaintiff was attempting to "improve appearance," which is discriminatory based on sex, applying stereotyped notions of what a traditional female face looks like, and comparing Plaintiff to those standards (gender expression), when what matters is how Plaintiff identified herself (her gender identity).

75.    Plaintiff was frequently misgendered with a name that was not Plaintiff's preferred name which was used to refer to Plaintiff throughout the claims process.  Defendants knew Plaintiff's gender identity but nevertheless misgendered Plaintiff with a preferred name that was not Plaintiff's preferred name.

76.    Defendants' discriminatory acts described herein result in disparate treatment of the Defendant, City of Philadelphia's, employees based on sex, gender identity, and gender stereotyping, in violation of Title VII.

77.    Defendants denied medically-necessary care and treatment for Ms. Doe's gender dysphoria by stereotyping her based on sex, stating that she was attempting to improve her appearance, when she was not, and instead was seeking medically-necessary care and treatment for her gender dysphoria.

78.    Defendants engaged in the foregoing discriminatory acts and/or omissions with malice or with reckless indifference to Ms. Doe's protected rights under Title VII and therefore punitive damages are warranted against the Defendants.

79.   Plaintiff suffered loss of income including back and front pay on account of Defendants' discriminatory denial of insurance coverage, as Plaintiff cannot function in society or work without FFS and related procedures, as a result of Defendants' discriminatory denial, which created a barrier to care that effectively required Plaintiff to maintain the sex characteristics of her sex assigned at birth, and with sex characteristics for a sex with which she no longer identified, in order to remain employed, constituting sex discrimination in violation of Title VII.

80.   Plaintiff was directly and proximately caused by Defendants to suffer economic harms, emotional distress, mental anguish, pain and suffering, humiliation and embarrassment, loss of enjoyment of life and life's pleasures, and other damages, as described more fully herein, on account of the Defendants' discriminatory actions, and for which Plaintiff seeks economic damages, compensatory damages, punitive damages, and other damages described more fully below, and which are incorporated herein by reference as if the same were set forth more fully at length herein.

81.   Defendants, City of Philadelphia, Independence Blue Cross, Firefighters & Paramedics Local 22, Firefighters & Paramedics Local 22 Fund, and Firefighters & Paramedics Local 22 Health Plan, intentionally discriminated against Plaintiff by subjecting Plaintiff to unequal terms, conditions, benefits, and privileges of her employment, by denying coverage for facial feminization surgeries, procedures, and related medical treatments, as covered services, when medically necessary as gender-affirming care and treatment, from Defendant, City of Philadelphia's, self-funded employer-sponsored health plan.

**COUNT II:**
**DISCRIMINATION BASED ON GENDER IDENTITY IN VIOLATION OF THE**
**PHILADELPHIA FAIR PRACTICES ORDINANCE ("PFPO"), CHAPTER 9-1100,**
**SECTION 9-1101, <u>et seq.</u>, OF THE PHILADELPHIA CODE**
**(PLAINTIFF, JANE DOE v. DEFENDANTS, CITY OF PHILADELPHIA,**
**INDEPENDENCE BLUE CROSS, FIREFIGHTERS & PARAMEDICS LOCAL 22,**
**FIREFIGHTERS & PARAMEDICS LOCAL 22 FUND, and FIREFIGHTERS &**
**<u>PARAMEDICS LOCAL 22 HEALTH PLAN)</u>**

82.   Ms. Doe restates and realleges all previous paragraphs as though fully set forth here.

83.   Defendants discriminated against Ms. Doe in violation of the PFPO, at Section 9-1101, <u>et seq.</u>, of the Philadelphia Code.

84.   The Defendants constitute an "employer" within the meaning of the PFPO at § 9-1102(h).

85.   Defendants engaged in "discrimination" as defined by the PFPO which prohibits discrimination that includes "[a]ny direct or indirect practice of exclusion . . . refusal," or "denial," "on the basis of actual or perceived . . . sex," or "gender identity." § 9-1102(e).

86.   The PFPO explicitly protects Plaintiff from discrimination on the basis of her "gender identity," § 9-1102(e), therefore prohibits the discriminatory conduct complained of herein.

87.   The PFPO prohibits discrimination on the basis of sex, gender, gender identity, gender transition, and gender stereotyping.

88.   Defendants discriminated against Ms. Doe on the basis of Ms. Doe's gender identity, on the basis of Ms. Doe's gender, and based on gender stereotyping, by wrongfully denying health insurance coverage to Ms. Doe for FFS and related procedures.

89.   Defendants engaged in the foregoing discriminatory acts and/or omissions with malice or with reckless indifference to Doe's protected rights and therefore punitive damages are warranted against the Defendants.

19

90.     Plaintiff was directly and proximately caused by Defendants to suffer economic harms, emotional distress, mental anguish, pain and suffering, humiliation and embarrassment, loss of enjoyment of life and life's pleasures, and other damages, as described more fully herein, on account of the Defendants' discriminatory actions, and for which Plaintiff seeks economic damages, compensatory damages, punitive damages, and other damages described more fully below, and which are incorporated herein by reference as if the same were set forth more fully at length herein.

## COUNT III:
### DISCRIMINATION BASED ON SEX IN VIOLATION OF SECTION 1557 OF THE AFFORDABLE CARE ACT, 42 U.S.C. § 18116
### (PLAINTIFF, JANE DOE v. DEFENDANTS, CITY OF PHILADELPHIA, INDEPENDENCE BLUE CROSS, FIREFIGHTERS & PARAMEDICS LOCAL 22, FIREFIGHTERS & PARAMEDICS LOCAL 22 FUND, and FIREFIGHTERS & PARAMEDICS LOCAL 22 HEALTH PLAN)

91.     Ms. Doe restates and realleges all previous paragraphs as though fully set forth here.

92.     Congress prohibited sex discrimination in any health care program and activity, including policies of insurance issued on behalf of health insurance companies, that includes the Defendants, IBX and QCC, at 42 U.S.C. § 18116, also known as Section 1557, the Patient Protection and Affordable Care Act, or Affordable Care Act.

93.     It is believed and therefore averred that Defendants received Federal financial assistance, including, it is believed, for their health programs or activities, and are therefore covered entities under Section 1557 of the Affordable Care Act.

94.     It is believed and therefore averred that Defendant, Independence Blue Cross, is a health insurance issuer, with respect to Defendant, City of Philadelphia's, self-funded employer-sponsored health plan, and is therefore a covered entity within the meaning of Section

1557 of the Affordable Care Act.

95.     42 U.S.C. § 18116 covers the Defendants as Section 18116  provides, in pertinent part, as

follows:

§ 18116. Nondiscrimination.

(a) In general.

> Except as otherwise provided for in this title (or an amendment made by this title),
> an individual shall not, on the ground prohibited under title VI of the Civil Rights
> Act of 1964 (42 U.S.C. 2000d et seq.), title IX of the Education Amendments of
> 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination Act of 1975 (42 U.S.C.
> 6101 et seq.), or section 794 of title 29, be excluded from participation in, be denied
> the benefits of, or be subjected to discrimination under, any health program or
> activity, any part of which is receiving Federal financial assistance, including
> credits, subsidies, or contracts of insurance, or under any program or activity that
> is administered by an Executive Agency or any entity established under this title
> (or amendments).

42 U.S.C. § 18116(a).

96.     Section 1557 of the Affordable Care Act, along with its implementing regulations, at 45

CFR § 92, et seq., 81 FR 31375-473 (May 18, 2016), have adopted the ACA non-

discrimination rule, which prohibits discrimination based on sex, gender identity, and

gender expression, by referring to and incorporating therein the prohibitions of Title IX

(20 U.S.C. § 1681) against sex discrimination including its enforcement provisions.

97.     According to 45 CFR § 92.1, "Section 1557 requires the application of the

enforcement mechanisms under Title VI of the Civil Rights Act of 1964 (42 U.S.C.

2000d et seq.), Title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et

seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), and Section 504 of

the Rehabilitation Act of 1973 (29 U.S.C. 794) for purposes of violations of Section

1557 and this part."  45 CFR § 92.1 (Subpart A – General Provisions).

98.    45 CFR § 92.2 further provides in pertinent part:

> Except as provided in Title I of the Patient Protection and Affordable Care Act (or any amendment thereto), an individual shall not, on any of the grounds set forth in paragraph (b) of this section, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any health program or activity, any part of which is receiving Federal financial assistance (including credits, subsidies, or contracts of insurance) provided by the U.S. Department of Health and Human Services; or under any program or activity administered by the Department under such Title; or under any program or activity administered by any entity established under such Title.

45 CFR § 92.2.

99.    Defendant, Independence Blue Cross, was required to certify compliance with the prohibitions against sex discrimination in 42 U.S.C. § 18116 in order to participate in the Commonwealth of Pennsylvania's State Health Insurance Exchange, under 45 C.F.R. § 92.4:

> Assurances.
>
> (a) Assurances.  An entity applying for Federal financial assistance to which this part applies shall, as a condition of any application for Federal financial assistance, submit an assurance, on a form specified by the Director of the Department's Office for Civil Rights, that the entity's health programs or activities will be operated in compliance with section 1557 and this part.  A health insurance issuer seeking certification to participate in an Exchange or a State seeking approval to operate a State Exchange to which section 1557 or this part applies shall, as a condition of certification or approval, submit an assurance, on a form specified by the Director of the Department's Office for Civil Rights, that the health program or activity will be operated in compliance with section 1557 and this part.  An applicant or entity may incorporate this assurance by reference in subsequent applications to the Department for Federal financial assistance or requests for certification to participate in an Exchange or approval to operate a State Exchange.

45 C.F.R. § 92.4.

100.    Section 1557 provides that "an individual shall not, on the ground prohibited under …Title IX of the Education Amendments of 1972 (20 U.S.C. 1681, et seq.)" – which

prohibits discrimination "on the basis of sex" – "be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance."  42 U.S.C. § 18116(a).

101.  The Department of Health and Human Services' ("HHS") regulations including the ACA non-discrimination rule apply to "covered entities" and prohibit discrimination on the basis of gender identity. 45 C.F.R. §§ 92.4, 92.207.

102.  Defendants constitute an issuer of insurance products, plans, and benefits that receive Federal financial assistance for those products, plans, and benefits.

103.  Each of the Defendants constitute a "covered entity" under 45 C.F.R. § 92.4.3.

104.  Discrimination on the basis of gender identity, transgender status, gender transition, or gender nonconformity constitutes discrimination on the basis of "sex" under Section 1557.

105.  Ms. Doe has been wrongfully subjected to discrimination by Defendants because of her sex.

106.  In addition to wrongfully denying Plaintiff insurance coverage on account of her gender identity, on account of gender stereotypes, and/or on account of sex, Defendant, Independence Blue Cross, misgendered Ms. Doe.  Defendants knew Ms. Doe's gender identity but nevertheless used a name that was not Ms. Doe's preferred name to refer to her throughout the claims process.  Defendants have the facilities to include a preferred name but did not do so for Ms. Doe.

107.  Plaintiff was directly and proximately caused by Defendants to suffer economic harms

and other damages, as described more fully herein on account of the Defendants'

discriminatory actions, and for which Plaintiff seeks economic and other damages.

**COUNT IV:**
**DISCRIMINATION BASED ON DISABILITY IN VIOLATION OF SECTION 1557 OF**
**THE AFFORDABLE CARE ACT, 42 U.S.C. § 18116**
**(PLAINTIFF, JANE DOE v. DEFENDANTS, CITY OF PHILADELPHIA,**
**INDEPENDENCE BLUE CROSS, AND FIREFIGHTERS & PARAMEDICS LOCAL 22,**
**FIREFIGHTERS & PARAMEDICS LOCAL 22 FUND, and FIREFIGHTERS &**
**PARAMEDICS LOCAL 22 HEALTH PLAN)**

108.    Ms. Doe restates and realleges all previous paragraphs as though fully set forth here.

109.    Ms. Doe has a disability, gender dysphoria, or "GD," covered within the meaning of

Section 1557 of the Affordable Care Act.

110.    Congress prohibited discrimination in any health care program and activity, including

policies of insurance issued on behalf of health insurance companies, on the basis of

disability, that includes the Defendants, at 42 U.S.C. § 18116, also known as Section

1557, the Affordable Care Act.

111.    42 U.S.C. § 18116 provides, in pertinent part, as follows;

§ 18116. Nondiscrimination.

(a) In general.

> Except as otherwise provided for in this title (or an amendment made by this title),
> an individual shall not, on the ground prohibited under title VI of the Civil
> Rights Act of 1964 (42 U.S.C. 2000d et seq.), title IX of the Education Amendments of
> 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101
> et seq.), ***or section 794 of title 29 [the Rehabilitation Act],*** be excluded from
> participation in, be denied the benefits of, or be subjected to discrimination under,
> any health program or activity, any part of which is receiving Federal financial
> assistance, including credits, subsidies, or contracts of insurance, or under any
> program or activity that is administered by an Executive Agency or any entity
> established under this title (or amendments).

42 U.S.C. § 18116(a) (emphasis added).

112.  According to 45 CFR § 92.1, "Section 1557 requires the application of the enforcement mechanisms under Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d <u>et seq.</u>), Title IX of the Education Amendments of 1972 (20 U.S.C. 1681 <u>et seq.</u>), the Age Discrimination Act of 1975 (42 U.S.C. 6101 <u>et seq.</u>), and Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794) for purposes of violations of Section 1557 and this part."  45 CFR § 92.1 (Subpart A – General Provisions).

113.  Defendant, Independence Blue Cross, was required to certify compliance with the prohibitions against discrimination based on disability as set forth in 42 U.S.C. § 18116 in order to participate in the Commonwealth of Pennsylvania's State Health Insurance Exchange, under 45 C.F.R. § 92.4:

> <u>Assurances.</u>
>
> (a)  Assurances.  An entity applying for Federal financial assistance to which this part applies shall, as a condition of any application for Federal financial assistance, submit an assurance, on a form specified by the Director of the Department's Office for Civil Rights, that the entity's health programs or activities will be operated in compliance with section 1557 and this part.  A health insurance issuer seeking certification to participate in an Exchange or a State seeking approval to operate a State Exchange to which section 1557 or this part applies shall, as a condition of certification or approval, submit an assurance, on a form specified by the Director of the Department's Office for Civil Rights, that the health program or activity will be operated in compliance with section 1557 and this part.  An applicant or entity may incorporate this assurance by reference in subsequent applications to the Department for Federal financial assistance or requests for certification to participate in an Exchange or approval to operate a State Exchange.

45 C.F.R. § 92.4

114.  The Department of Health and Human Services ("HHS") regulations including the ACA non-discrimination rule apply to "covered entities" and prohibit discrimination on the

basis of actual or perceived disability.  45 C.F.R. §§ 92.4, 92.207.

115.    Defendants each constitute a "covered entity" under 45 C.F.R. § 92.4.3.

116.    Ms. Doe has been wrongfully been subjected to discrimination by Defendants

because of her disability (gender dysphoria).

117.    Defendants incorrectly applied the "functional impairment" provision of their Policy,

see Medical Policy Bulletin, attached hereto as Exhibit "C," p. 4, requiring Plaintiff

to state a physical deformity, disfigurement, abnormality, or impairment, which is

discriminatory, when Plaintiff had demonstrated functional impairments in social and

occupational functioning, which was sufficient.

118.    It is believed and therefore averred Defendants rejected coverage for the requested

procedures on the additional basis that Plaintiff was required to demonstrate a

physical or functional component to obtain coverage for FFS under Defendants'

policy.  However, Plaintiff stated a functional impairment consistent with the written

terms of the policy by stating functional impairments in social and occupational

functioning.  Defendants improperly applied the "functional impairment" provision

of their policy against Plaintiff.  Therefore, Defendants' denial is improper, arbitrary,

capricious, and discriminatory on the basis of Ms. Doe's disability (gender

dysphoria).

119.    Defendants denied medically-necessary care and treatment for Ms. Doe's gender

dysphoria by stating that she was attempting to improve her appearance, when she

was not, and instead was seeking medically-necessary care and treatment for her

gender dysphoria, which Defendants denied on account of discrimination due to Ms.

Doe's gender-dysphoria disability.

120. Defendants rejected coverage stating that Plaintiff was required to demonstrate a physical or functional component (such as, for example, disfigurement) to obtain coverage for FFS under Defendants' policy. However, Plaintiff *has* demonstrated a physical or functional impairment (gender dysphoria), and Defendants' denial is improper, arbitrary, capricious, and discriminatory.

121. Defendants rejected coverage for the requested procedures on the improper basis that Plaintiff had demonstrated a *mental* impairment, and had not demonstrated a *physical* impairment, which is factually incorrect as Plaintiff had demonstrated a physical impairment.

122. Defendants' rejection of coverage on the basis that Plaintiff has demonstrated a *mental* impairment, as opposed to a *physical* impairment, constitutes impermissible discrimination, or disparate treatment, based on disability. Plaintiff contends she has a physical impairment. However, assuming *arguendo* that Plaintiff does not have a physical impairment, Plaintiff's gender dysphoria constitutes a mental impairment, and covering similarly situated transgender or non-transgender individuals with a *physical* impairment, but not a *mental* impairment, for such surgeries, constitutes discrimination based on disability.

123. Plaintiff was directly and proximately caused by Defendants to suffer economic harms and other damages, as described more fully herein on account of the Defendants' discriminatory actions, and for which Plaintiff seeks economic and other damages.

**COUNT V:**
**DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES**

**ACT ("ADA"), AS AMENDED, 42 U.S.C. § 12101, *et seq.***
**(PLAINTIFF, JANE DOE v. DEFENDANTS, CITY OF PHILADELPHIA,**
**INDEPENDENCE BLUE CROSS, AND FIREFIGHTERS & PARAMEDICS LOCAL 22,**
**FIREFIGHTERS & PARAMEDICS LOCAL 22 FUND, and FIREFIGHTERS &**
**<u>PARAMEDICS LOCAL 22 HEALTH PLAN)</u>**

124.   Ms. Doe restates and realleges all previous paragraphs as though fully set forth here.

125.   Defendants discriminated against Ms. Doe based on her disability—gender dysphoria
       ("GD")—in violation of Title I of the ADA, 42 U.S.C. § 12112(a), <u>et seq.</u>—which
       prohibits employment discrimination including the unequal and discriminatory provision
       of benefits based on disability.

126.   Defendants constitute covered entities pursuant to 42 U.S.C. § 12111(2).

127.   Plaintiff was an employee of Defendant, City of Philadelphia, pursuant to 42 U.S.C. §
       12111(4).

128.   Plaintiff received health insurance coverage through the City's employer-sponsored
       healthcare plan, controlled by Defendants, City of Philadelphia, Independence Blue
       Cross, Firefighters & Paramedics Local 22, Firefighters & Paramedics Local 22 Fund,
       Firefighters & Paramedics Local 22 Health Plan, administered and underwritten by
       Defendant, Independence Blue Cross.

129.   Defendants are covered under Title I of the ADA, 42 U.S.C. § 12112(a), <u>et seq.</u>

130.   Alternatively, Defendant, City of Philadelphia, delegated an important aspect of the
       employment relationship to a third party, Defendant, Independence Blue Cross, which
       discriminated against the Plaintiff based on disability in violation of Title I of the ADA.

131.   It is believed and therefore averred that Defendants had control over the coverage of FFS
       procedures and did not permit coverage of FFS procedures based on discrimination on

account of Ms. Doe's disability (gender dysphoria).

132. Doe is a qualified individual under the ADA who "with or without reasonable accommodation, can perform the essential functions of the employment position that he or she holds."  42 U.S.C. § 12111(8).

133. Ms. Doe has a disability, gender dysphoria, or GD, within the meaning of the ADA. Ms. Doe's gender dysphoria constitutes a disability under the ADA because it is a physical or mental impairment that substantially limits one or more major life activities. 42 U.S.C. § 12102(1).

134. The substantial limitation on Doe's major life activities include limitations in social and occupational functioning.

135. Ms. Doe was clinically diagnosed with GD and has clinically significant distress associated with being transgender.

136. Defendants incorrectly applied the "functional impairment" provision of their Policy, see Medical Policy Bulletin, attached hereto as Exhibit "C," p. 4, requiring Plaintiff to state a physical deformity, disfigurement, abnormality, or impairment, which is discriminatory, when Plaintiff had demonstrated an ADA-covered disability in the form of gender dysphoria ("GD") which substantially limited one (1) or more major life activities including social and occupational functioning.

137. It is believed and therefore averred Defendants rejected coverage for the requested procedures on the additional basis that Plaintiff was required to demonstrate a physical or functional component to obtain coverage for FFS under Defendants' policy.  However, Plaintiff stated a functional impairment consistent with the written

terms of the policy by stating functional impairments in social and occupational functioning.  Defendants improperly applied the "functional impairment" provision of their policy against Plaintiff.  Therefore, Defendants' denial is improper, arbitrary, capricious, and discriminatory on the basis of Ms. Doe's disability (gender dysphoria).

138.    Defendants denied medically-necessary care and treatment for Ms. Doe's gender dysphoria by stating that she was attempting to improve her appearance, when she was not, and instead was seeking medically-necessary care and treatment for her gender dysphoria, which Defendants denied on account of discrimination due to Ms. Doe's gender-dysphoria disability.

139.    The denials violate the ADA by discriminating on the basis of disability in the denial of coverage for treatment meant to alleviate Ms. Doe's disability.

140.    Defendants rejected coverage stating that Plaintiff was required to demonstrate a physical or functional component (such as, for example, a physical deformity, disfigurement, abnormality, and/or impairment) to obtain coverage for FFS under Defendants' policy.  However, Plaintiff *has* demonstrated a physical or functional impairment (gender dysphoria), and Defendants' denial is improper, arbitrary, capricious, and discriminatory.

141.    Defendants rejected coverage for the requested procedures on the improper basis that Plaintiff had demonstrated a *mental* impairment, and had not demonstrated a *physical* impairment, which is factually incorrect as Plaintiff had demonstrated a physical impairment.

142.  Defendants' rejection of coverage on the basis that Plaintiff has demonstrated a *mental* impairment, as opposed to a *physical* impairment, constitutes impermissible discrimination, or disparate treatment, based on disability.  Plaintiff contends she has a physical impairment.  However, assuming *arguendo* that Plaintiff does not have a physical impairment, Plaintiff's gender dysphoria constitutes a mental impairment, and covering similarly situated transgender or non-transgender individuals with a *physical* impairment, but not a *mental* impairment, for such surgeries, constitutes discrimination based on disability.

143.  The so-called Gender Identity Disorder ("GID") exclusion does not apply to Ms. Doe because she does not state a gender-identity disorder.

144.  The so-called Gender Identity Disorder ("GID") exclusion does not apply to Ms. Doe because she has a physical impairment in line with the statute, the ADA.

145.  Assuming *arguendo* Ms. Doe does have a gender-identity disorder, which is denied, and assuming *arguendo* she does not state a physical impairment, which is denied, Ms. Doe states a mental impairment which is covered by the statute, in light of the fact that the so-called GID exclusion cannot be upheld as constitutional.

146.  Section 12211(b) of the ADA, the so-called GID exclusion, provides that the definition of a disability does not include "transvestism, transsexualism, pedophilia, exhibitionism, voyeurism, ***gender identity disorders not resulting from physical impairments***, [and] other sexual behavior disorders."  42 U.S.C. § 12211(b) (emphasis added).

147.  The "Gender Identity Disorder" ("GID") exclusion codified at 42 U.S.C. § 12211(b) is discriminatory and violates due process, to wit:

148. Ms. Doe is a member of a protected class of people who are transgender.

149. The GID exclusion fails strict scrutiny which is the standard of review applicable to transgender status.

150. The GID exclusion fails heightened or intermediate scrutiny applicable to sex-based classifications, as Bostock v. Clayton County, Georgia, Nos. 17-1618, 590 U.S. ___, 140 S. Ct. 1731, 2020 WL 3146686 (U.S. June 15, 2020), held that discrimination based on transgender status constitutes discrimination based on sex.

151. The GID exclusion violates the "rational basis with bite" standard of review found to be applicable to anti-LGBTQ+ bias which includes anti-transgender bias.  See, e.g., Romer v. Evans, 517 U.S. 620 (1996); Lawrence v. Texas, 539 U.S. 558 (2003); United States v. Windsor, 133 S. Ct. 2576 (2013); Obergefell v. Hodges, 135 S. Ct. 2584 (2015) (applying the 'rational basis with bite' standard of review).

152. The GID exclusion fails the rational basis standard of review.  There is no rational basis for the GID exclusion.  "[A] bare congressional desire to harm a politically unpopular group cannot justify disparate treatment of that group."  Dep't of Agriculture v. Moreno, 413 U.S. 528, 534-35 (1973).

153. The GID exclusion is unconstitutional on its face.

154. The GID exclusion is unconstitutional as applied to Ms. Doe.

155. The GID exclusion has created second-class citizens of people who are transgender and gender non-conforming.

156. The GID exclusion deprives Ms. Doe and other people who are transgender or gender non-conforming of dignity and due process.

157.  It is time for a judicial determination of whether the so-called Gender Identity Disorder ("GID") exclusion is constitutional.

158.  As a direct and proximate result of Defendants' aforesaid unlawful discriminatory practices Ms. Doe has sustained harm.

159.  Ms. Doe seeks redress for Defendants' violation of her rights under 42 U.S.C. §12133.

160.  Plaintiff was directly and proximately caused by Defendants to suffer economic harms, emotional distress, mental anguish, pain and suffering, humiliation and embarrassment, loss of enjoyment of life and life's pleasures, and other damages, as described more fully herein, on account of the Defendants' discriminatory actions, and for which Plaintiff seeks economic damages, compensatory damages, punitive damages, and other damages described more fully below, and which are incorporated herein by reference as if the same were set forth more fully at length herein.

161.  Defendants acted with malice, reckless indifference, and/or deliberate indifference to Ms. Doe's rights under the ADA and therefore punitive damages are warranted.

**COUNT VI:**
**DISCRIMINATION BASED ON DISABILITY IN VIOLATION OF THE**
**PHILADELPHIA FAIR PRACTICES ORDINANCE ("PFPO"), SECTION 9-1101,**
**et seq., OF THE PHILADELPHIA CODE**
**(PLAINTIFF, JANE DOE v. DEFENDANTS, CITY OF PHILADELPHIA,**
**INDEPENDENCE BLUE CROSS, AND FIREFIGHTERS & PARAMEDICS LOCAL 22,**
**FIREFIGHTERS & PARAMEDICS LOCAL 22 FUND, and FIREFIGHTERS &**
**PARAMEDICS LOCAL 22 HEALTH PLAN)**

162.  Ms. Doe restates and realleges all previous paragraphs as though fully set forth here.

163.  Defendants discriminated against and failed to accommodate Ms. Doe's gender-dysphoria disability in violation of the Philadelphia Fair Practices Ordinance ("PFPO"), at Chapter 9-1100 of the Philadelphia Code.

164. The Defendants constitute an "employer" within the meaning of the PFPO at § 9-1102(h).

165. Defendants engaged in "discrimination" as defined by the PFPO which prohibits discrimination that includes "[a]ny direct or indirect practice of exclusion . . . refusal," or "denial," "on the basis of actual or perceived . . . disability."  § 9-1102(e).

166. The PFPO explicitly protects Plaintiff from discrimination on the basis of her "gender identity," § 9-1102(e), therefore prohibits discrimination including based on Plaintiff's gender-dysphoria disability.

167. Defendants' rejection of coverage on the basis that Plaintiff has demonstrated a *mental* impairment, as opposed to a *physical* impairment, constitutes impermissible discrimination, or disparate treatment, based on disability.  Plaintiff contends she has a physical impairment.  However, assuming *arguendo* that Plaintiff does not have a physical impairment, Plaintiff's gender dysphoria constitutes a mental impairment, and covering similarly situated transgender or non-transgender individuals with a *physical* impairment, but not a *mental* impairment, for such surgeries, constitutes discrimination based on disability.

168. Defendants discriminated against Ms. Doe on the basis of Ms. Doe's gender-dysphoria disability by wrongfully denying health insurance coverage to Ms. Doe for FFS and related procedures.

169. Defendants engaged in the foregoing discriminatory acts and/or omissions with malice or with reckless indifference to Doe's protected rights and therefore punitive damages are warranted against the Defendants.

170. Plaintiff was directly and proximately caused by Defendants to suffer economic harms,

emotional distress, mental anguish, pain and suffering, humiliation and embarrassment,

loss of enjoyment of life and life's pleasures, and other damages, as described more

fully herein, on account of the Defendants' discriminatory actions, and for which

Plaintiff seeks economic damages, compensatory damages, punitive damages, and other

damages described more fully below, and which are incorporated herein by reference as

if the same were set forth more fully at length herein.

**COUNT VII:**
**VIOLATION OF § 502(a)(1)(B) OF THE EMPLOYEE RETIREMENT INCOME**
**SECURITY ACT ("ERISA"), 29 U.S.C. § 1132(a)(1)(B)**
**(PLAINTIFF, JANE DOE v. DEFENDANT, FIREFIGHTERS & PARAMEDICS LOCAL**
**22 HEALTH PLAN)**

171.    Ms. Doe restates and realleges all previous paragraphs as though fully set forth here.

172.    It is believed and therefore averred that the plan, "Firefighters & Paramedics Local 22

Health Plan" (hereinafter the "Health Benefit Plan" or "the Plan") is an employee

benefit plan covered by the Employee Retirement Income Security Act ("ERISA").

173.    It is believed and therefore averred that Plaintiff was, at all times relevant hereto,

a participant of the Plan.

174.    Plaintiff was wrongfully denied insurance benefits for FFS surgeries and related

procedures owed by the Plan.

175.    Defendant, the Plan, incorrectly determined that Plaintiff could not demonstrate that

the coverage sought was for procedures that were "medically necessary" as opposed to

cosmetic.

176.    Defendant, the Plan, incorrectly determined that Plaintiff sought cosmetic surgeries

when Plaintiff did not. At all times relevant hereto, Plaintiff sought coverage for

surgeries that were medically necessary and not cosmetic.

177. Plaintiff met the Policy's language stating that a functional impairment is defined as "Clinically significant distress or impairment in social, school, or other important areas of functioning."  See Medical Policy Bulletin, produced by Defendant in the first transgender claimant's benefits discrimination case as DOE_IBC_000001 - DOE_IBC_000005, and attached hereto as Ex. "D," Bates DOE_IBC_000003, ECF p. 4.

178. Defendant, the Plan, incorrectly applied the terms of the Plan, including the provision relating to "functional impairment," and improperly denied benefits to Plaintiff on this basis.  See Medical Policy Bulletin attached hereto as Exhibit "C," at p. 4.

179. Defendant, the Plan, clearly violated the plain terms of the Plan including the following provision:

> The Member has the right to receive health care services without discrimination based on race, ethnicity, age, mental or physical disability, genetic information, color, religion, gender, national origin, source of payment, sexual orientation, or sex, including stereotypes and gender identity, for Medically Necessary health services made available on the same terms for all individuals, regardless of sex assigned at birth, gender identity, or recorded gender; Based on an individual's sex assigned at birth, gender identity, or recorded gender, if it is different from the one to which such health service is ordinarily available; Related to gender transition if such denial or limitation results in discriminating against a transgender individual.

180. However, Defendants deviated from and did not follow the terms of the Plan with respect to non-discrimination in the Plaintiff's case, discriminating against Plaintiff in violation of the terms of the Plan as well as in violation of Federal, state, and City law.

181. Plaintiff seeks to recover from Defendant, the Plan, in this cause of action, as follows:

   a.   Declaratory and equitable/injunctive relief requiring the Plan to insure

Plaintiff and other transgender people with gender dysphoria for facial feminization surgeries and related procedures on an equal and non-discriminatory basis; to adopt and enforce a written policy, procedure, or guideline to this effect; and to immediately order a re-evaluation of Plaintiff's claim for the purposes of evaluating Plaintiff's claim on an equal and non-discriminatory basis;

b.   Declaratory and equitable/injunctive relief providing that Plaintiff is covered for all FFS and related procedures wrongfully denied, and providing that Plaintiff will be covered and all benefits paid moving forward;

c.   Back benefits or the economic value of the payment of all benefits wrongfully denied by the Plan;

d.   Any out-of-pocket expenses which may include expenses related to travel, transportation, accommodations, and related expenses;

e.   Any other out-of-pocket expenses and/or economic damages incurred by Plaintiff the recovery of which would place the Plaintiff in the same position but for the discrimination against her;

f.   An award of reasonable attorneys' fees and costs;

g.   Pre- and post-judgment interest;

h.   Any other equitable relief.

## COUNT VIII:
## FAILURE-TO-ACCOMMODATE DISABILITY IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT ("ADA"), AS AMENDED, 42 U.S.C. § 12101, *et seq.*

**(PLAINTIFF, JANE DOE v. DEFENDANTS, CITY OF PHILADELPHIA, INDEPENDENCE BLUE CROSS, AND FIREFIGHTERS & PARAMEDICS LOCAL 22, FIREFIGHTERS & PARAMEDICS LOCAL 22 FUND, and FIREFIGHTERS & PARAMEDICS LOCAL 22 HEALTH PLAN)**

182. Ms. Doe restates and realleges all previous paragraphs as though fully set forth here.

183. Defendants discriminated against Ms. Doe based on her disability, gender dysphoria ("GD").

184. Plaintiff was an employee of Defendant, City of Philadelphia, pursuant to 42 U.S.C. § 12111(4).

185. Plaintiff received health insurance coverage through the City's employer-sponsored healthcare plan, specifically, Firefighters & Paramedics Local 22 Health Plan.

186. It is believed and therefore averred that Defendants had control over the coverage of FFS procedures and did not permit coverage of FFS procedures based on discrimination on account of gender identity and gender stereotyping.

187. Doe is a qualified individual under the ADA who "with or without reasonable accommodation, can perform the essential functions of the employment position that he or she holds." 42 U.S.C. § 12111(8).

188. Ms. Doe has a disability, gender dysphoria, or GD, within the meaning of the ADA. Doe's gender dysphoria constitutes a disability under the ADA because it is a physical or mental impairment that substantially limits one or more major life activities. 42 U.S.C. § 12102(1).

189. The substantial limitation on Doe's interaction with others is characterized on a regular basis by a substantial limitation in the major life activities of social and occupational functioning.

190.    Ms. Doe was clinically diagnosed with GD and has clinically significant distress
        associated with being transgender.  Ms. Doe is substantially limited in the major life
        activities of social and occupational functioning.

191.    Defendant, City of Philadelphia, discriminated against Ms. Doe in her capacity as an
        employee, by denying coverage to Ms. Doe for FFS and related procedures to alleviate
        symptoms of her gender-dysphoria disability.

192.    Plaintiff met the Policy's language stating that a functional impairment is defined as
        "Clinically significant distress or impairment in social, school, or other important areas
        of functioning."  See Medical Policy Bulletin, produced by Defendant in the first
        transgender claimant's benefits discrimination case as DOE_IBC_000001 -
        DOE_IBC_000005, and attached hereto as Ex. "D," Bates DOE_IBC_000003, ECF p.
        4.

193.    Defendants deviated from and did not properly or appropriately apply the requirement
        of a "functional impairment" in the Policy which Plaintiff contends constitutes
        discrimination against Plaintiff based on Plaintiff's disability (gender dysphoria).

194.    The denials violate the ADA by discriminating on the basis of disability in the
        denial of coverage for treatment meant to alleviate Ms. Doe's disability.

195.    Defendants' rejection of coverage on the basis that Plaintiff has demonstrated a
        *mental* impairment, as opposed to a *physical* impairment, constitutes impermissible
        discrimination, or disparate treatment, based on disability.  Plaintiff contends she
        has a physical impairment.  However, assuming *arguendo* that Plaintiff does not
        have a physical impairment, Plaintiff's gender dysphoria constitutes a mental

impairment, and covering similarly situated transgender or non-transgender individuals with a *physical* impairment, but not a *mental* impairment, for such surgeries, constitutes discrimination based on disability.

196. Defendants failed to accommodate Plaintiff's gender dysphoria ("GD") disability by covering Plaintiff's FFS and related procedures. Defendants failed to accommodate Plaintiff's requests for pre-authorization for coverage for FFS and related procedures on account of Plaintiff's GD.

197. Plaintiff could have performed the job she held or sought to hold, with reasonable accommodation. Defendants failed to accommodate Plaintiff's requests for pre-authorization seeking coverage for gender-affirming FFS surgeries, treatments, and related procedures.

198. The reasonable accommodation Plaintiff requested, and which Defendant, City of Philadelphia, denied, was coverage for FFS surgeries, treatments, and related procedures.

199. Defendant, City of Philadelphia, failed to accommodate Plaintiff's requests for reasonable accommodation, in the form of Plaintiff's requests for pre-authorization during her employment, seeking coverage for gender-affirming FFS surgeries, treatments, and related procedures, which were denied due to discrimination.

200. The so-called Gender Identity Disorder ("GID") exclusion does not apply to Ms. Doe because she does not state a gender-identity disorder.

201. The so-called Gender Identity Disorder ("GID") exclusion does not apply to Ms. Doe because she has a physical impairment in line with the statute, the ADA.

202.   Assuming *arguendo* Ms. Doe does have a gender-identity disorder, which is denied, and

assuming *arguendo* she does not state a physical impairment, which is denied, Ms. Doe

states a mental impairment which is covered by the statute, in light of the fact that the so-

called GID exclusion cannot be upheld as constitutional.

203.   Section 12211(b) of the ADA, the so-called GID exclusion, provides that the definition of

a disability does not include "transvestism, transsexualism, pedophilia, exhibitionism,

voyeurism, ***gender identity disorders not resulting from physical impairments***, [and]

other sexual behavior disorders."  42 U.S.C. § 12211(b) (emphasis added).

204.   The "Gender Identity Disorder" ("GID") exclusion codified at 42 U.S.C. § 12211(b) is

discriminatory and violates due process, to wit:

205.   Ms. Doe is a member of a protected class of people who are transgender.

206.   The GID exclusion fails strict scrutiny which is the standard of review applicable to

transgender status.

207.   The GID exclusion fails heightened or intermediate scrutiny applicable to sex-based

classifications, as Bostock v. Clayton County, Georgia, Nos. 17-1618, 590 U.S. ___, 140

S. Ct. 1731, 2020 WL 3146686 (U.S. June 15, 2020), held that discrimination based on

transgender status constitutes discrimination based on sex.

208.   The GID exclusion violates the "rational basis with bite" standard of review found to be

applicable to anti-LGBTQ+ bias which includes anti-transgender bias.  See, e.g., Romer v.

Evans, 517 U.S. 620 (1996); Lawrence v. Texas, 539 U.S. 558 (2003); United States v.

Windsor, 133 S. Ct. 2576 (2013); Obergefell v. Hodges, 135 S. Ct. 2584 (2015) (applying

the 'rational basis with bite' standard of review).

209.   The GID exclusion fails the rational basis standard of review.  There is no rational basis for the GID exclusion.  "[A] bare congressional desire to harm a politically unpopular group cannot justify disparate treatment of that group."  Dep't of Agriculture v. Moreno, 413 U.S. 528, 534-35 (1973).

210.   The GID exclusion is unconstitutional on its face.

211.   The GID exclusion is unconstitutional as applied to Ms. Doe.

212.   The GID exclusion has created second-class citizens of people who are transgender and gender non-conforming.

213.   The GID exclusion deprives Ms. Doe and other people who are transgender or gender non-conforming of dignity and due process.

214.   It is time for a judicial determination of whether the so-called Gender Identity Disorder ("GID") exclusion is constitutional.

215.   Defendants acted with malice, reckless indifference, and/or deliberate indifference to Ms. Doe's rights under the ADA and therefore punitive damages are warranted.

216.   As a direct and proximate result of Defendants' aforesaid unlawful discriminatory practices Ms. Doe has sustained harm.

217.   Ms. Doe seeks redress for Defendants' violation of her rights under 42 U.S.C. §12133.

218.   Plaintiff was directly and proximately caused by Defendants to suffer economic harms, emotional distress, mental anguish, pain and suffering, humiliation and embarrassment, loss of enjoyment of life and life's pleasures, and other damages, as described more fully herein, on account of the Defendants' discriminatory actions, and for which Plaintiff seeks economic damages, compensatory damages, punitive damages, and other

damages described more fully below, and which are incorporated herein by reference as

if the same were set forth more fully at length herein.

**COUNT IX:**
**FAILURE-TO-ACCOMMODATE DISABILITY IN VIOLATION OF THE**
**PHILADELPHIA FAIR PRACTICES ORDINANCE ("PFPO"), SECTION 9-1101,**
**et seq., OF THE PHILADELPHIA CODE**
**(PLAINTIFF, JANE DOE v. DEFENDANTS, CITY OF PHILADELPHIA,**
**INDEPENDENCE BLUE CROSS, AND FIREFIGHTERS & PARAMEDICS LOCAL 22)**

219.   Ms. Doe restates and realleges all previous paragraphs as though fully set forth here.

220.   Defendants discriminated against and failed to accommodate Ms. Doe's gender-

dysphoria disability in violation of the Philadelphia Fair Practices Ordinance ("PFPO"),

at Chapter 9-1100 of the Philadelphia Code.

221.   The Defendants constitute an "employer" within the meaning of the PFPO at § 9-1102(h).

222.   Defendants engaged in "discrimination" as defined by the PFPO which prohibits

discrimination that includes "[a]ny direct or indirect practice of exclusion . . . refusal," or

"denial," "on the basis of actual or perceived . . . disability." § 9-1102(e).

223.   The PFPO explicitly protects Plaintiff from discrimination on the basis of her "gender

identity," § 9-1102(e), therefore prohibits discrimination including based on Plaintiff's

gender-dysphoria disability.

224.   Defendants failed to accommodate Plaintiff's gender dysphoria ("GD") disability

by covering Plaintiff's FFS and related procedures.  Defendants failed to

accommodate Plaintiff's requests for pre-authorization for coverage for FFS and

related procedures on account of Plaintiff's GD.

225.   Plaintiff could have performed the job she held or sought to hold, with reasonable

accommodation.  Defendant, City of Philadelphia, failed to accommodate Plaintiffs

requests for pre-authorization seeking coverage for gender-affirming FFS surgeries, treatments, and related procedures.

226.   Plaintiff could have performed the job she held or sought to hold, with reasonable accommodation.

227.   The reasonable accommodation Plaintiff requested, and which Defendant, City of Philadelphia, denied, was coverage for FFS surgeries, treatments, and related procedures.

228.   Defendant, City of Philadelphia, discriminated against Ms. Doe on the basis of Ms. Doe's gender-dysphoria disability by wrongfully denying health insurance coverage to Ms. Doe for FFS and related procedures.

229.   Defendants engaged in the foregoing discriminatory acts and/or omissions with malice or with reckless indifference to Doe's protected rights and therefore punitive damages are warranted against the Defendants.

230.   Defendants failed to accommodate Plaintiff's gender dysphoria ("GD") disability by covering Plaintiff's FFS and related procedures.  Defendants failed to accommodate Plaintiff's requests for pre-authorization for coverage for FFS and related procedures on account of Plaintiff's GD.

231.   Plaintiff was directly and proximately caused by Defendants to suffer economic harms, emotional distress, mental anguish, pain and suffering, humiliation and embarrassment, loss of enjoyment of life and life's pleasures, and other damages, as described more fully herein, on account of the Defendants' discriminatory actions, and for which Plaintiff seeks economic damages, compensatory damages, punitive damages, and other

damages described more fully below, and which are incorporated herein by reference as if the same were set forth more fully at length herein.

## VI.   RELIEF REQUESTED

232.   Plaintiff seeks the following damages or other relief from the Defendants in this action individually and/or jointly and severally, on account of the Defendants' illegal and discriminatory acts, to the extent permitted by applicable law:

   a.   Economic damages;

   b.   Actual damages;

   c.   Out-of-pocket costs and expenses;

   d.   Incidental damages;

   e.   Consequential damages;

   f.   Compensatory damages including but not limited to humiliation and embarrassment, pain and suffering, loss of enjoyment of life and life's pleasures, exacerbated gender dysphoria ("GD"), negative body image and negative self-view, suicide ideation, psychological trauma, mental anguish, and emotional distress, under Title VII, the PFPO, and the ADA.

   g.   Punitive damages under Title VII, the PFPO, and the ADA.

   h.   An award of reasonable attorneys' fees, reasonable expert fees, and the costs and expenses incurred in this action, pursuant to 42 U.S.C. § 1988, and/or as otherwise provided by applicable law;

   i.   Pre- and post-judgment interest;

   j.   An order from the Court for equitable and/or injunctive relief to require the

Defendants to insure Plaintiff and other people who are transgender with gender dysphoria for facial feminization ("FFS") surgeries, procedures, medical treatments, including hair transplant procedures, on an equal and non-discriminatory basis; to adopt and enforce a written policy, procedure, or guideline to this effect; and to perform necessary training and education related thereto;

k.   An order for the Defendants to perform a re-evaluation of Plaintiff's claim, providing that Plaintiff is covered for all FFS and related procedures wrongfully denied, and providing that Plaintiff will be covered for FFS surgeries, procedures, and medical benefits, and that all benefits will be paid moving forward;

l.   An order for Defendants to hold LGBT sensitivity trainings for employees, claims agents, representatives, and specialists;

m.   An order from the Court for equitable or injunctive relief to require the Defendant, City of Philadelphia, to adopt a written policy stating that, if an employee complains about discrimination in employee benefits based on a protected class, including but not limited to sex, gender, sexual orientation, and/or gender identity, that such conduct constitutes discrimination, and providing an acceptable avenue of report for the complaint identified directly in the policy, to the Chief Human Resource Officer and/or a designee;

n.   An order that Defendant, Independence Blue Cross, will adopt and enforce

a written policy that the preferred name that is consistent with the claimant's gender identity will be used to refer to the claimant throughout the claims process.

o. Any such further relief as the Court may deem just, proper, and equitable.

## JURY DEMAND

Plaintiff hereby requests a trial by jury of eight (8) members on all counts so triable.

Respectfully submitted,

DATED: 01/31/2024  BY: */s/ Justin Robinette, Esquire*
           Justin Robinette, Esquire (I.D. # 319829)
           P.O. Box 15190
           Philadelphia, PA 19130-9998
           Tel: (267) 595-6254
           Fax: (267) 592-3067
           justin@jrobinettelaw.com

           *Attorney for Plaintiff*

## <u>**CERTIFICATE OF SERVICE**</u>

I, <u>Justin Robinette, Esquire</u>, attorney for the Plaintiff in the above captioned matter,

hereby certify that a true and correct copy of the foregoing document was filed with the Court

and served together with the Court-issued Summons by personal service/hand delivery to each

Defendant on the date set forth below, or as soon thereafter as service can be effectuated.

Respectfully submitted,

DATED: <u>01/31/2024</u>            BY:    <u>*/s/ Justin Robinette, Esquire*            </u>
                                              Justin Robinette, Esquire
                                              *Attorney for Plaintiff*