**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JANE DOE,<br>                    Plaintiff,<br><br>                    v.<br><br>CITY OF PHILADELPHIA;<br>INDEPENDENCE BLUE CROSS;<br>PHILADELPHIA FIREFIGHTERS' &<br>PARAMEDICS' UNION, I.A.F.F., LOCAL<br>22,<br><br>                    Defendants | Case No. <u>2:24-cv-00468-WB</u> |

<u>**SECOND AMENDED COMPLAINT**</u>

Plaintiff, Jane Doe, by and through her undersigned counsel, Justin Robinette, Esquire, hereby submits and files the instant Second Amended Complaint against Defendants, City of Philadelphia; Independence Blue Cross; and Philadelphia Firefighters' & Paramedics' Union, I.A.F.F., Local 22; averring in support thereof, as follows:

**I.   <u>THE PARTIES:</u>**

1.   Plaintiff, Jane Doe ("Plaintiff" or "Ms. Doe") is a citizen and resident of Philadelphia, Pennsylvania, residing at ████████████████████████████████████████ Plaintiff has redacted her name and address from the pleadings consistent with the Plaintiff's Motion to Proceed Anonymously filed on this same date.

2.   Defendant, City of Philadelphia (hereinafter "City of Philadelphia" or "the City") was, at all times relevant hereto, Plaintiff's employer, located at 1515 Arch Street, Suite 15, Philadelphia, PA 19102.

3.   Defendant, Independence Blue Cross (hereinafter "Independence Blue Cross" or "IBX"),

is a health insurance company with its headquarters and principal place of business located at 1901 Market Street, Philadelphia, PA 19103.

4.    Defendant, Philadelphia Firefighters' & Paramedics' Union, I.A.F.F., Local 22, is a labor organization, of which, at all times relevant hereto, Plaintiff was a member, and which maintained a headquarters and principal place of business located at 415 N. 5th Street, Philadelphia, PA 19123.

## II.   <u>JURISDICTION AND VENUE:</u>

5.    This Court has jurisdiction over the parties and claims pled herein pursuant to 28 U.S.C. § 1331.

6.    This Court has supplemental jurisdiction over related state law claims pled herein pursuant to 28 U.S.C. § 1367(a).

7.    This Court has jurisdiction over Defendants because Defendants' contacts with this state and judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in <u>International Shoe Company v. State of Washington</u>, 326 U.S. 310 (1945), and its progeny.

8.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3).

9.    At all times relevant hereto, upon information and belief, Defendant, City of Philadelphia, employed more than five hundred (500) persons for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

10.   Plaintiff exhausted all applicable administrative remedies and the pertinent Notice of Right-to-Sue is attached hereto as **Exhibit "A."**

### III.   MATERIAL FACTS

11.   Ms. Doe, at all times relevant hereto, was employed by Defendant, City of Philadelphia, as a firefighter.

12.   Ms. Doe is a Battalion Chief.

13.   Ms. Doe provided valued contributions to Defendant, City of Philadelphia, over the course of more than approximately twenty-eight (28) years she has been employed with the Defendant, City of Philadelphia.

14.   Ms. Doe came out during her employment with Defendant, City of Philadelphia, as a transgender woman.

15.   Ms. Doe is a person with a disability, gender dysphoria ("GD"), which is clinically significant distress associated with being transgender.

16.   Ms. Doe submitted a preclearance or preauthorization request seeking approval for the coverage of a series of surgical facial procedures known as "Facial Feminization Surgery," or "Facial Feminization Surgeries," abbreviated "FFS," which included specifically for Ms. Doe a rhinoplasty, septoplasty, septorhinoplasty, dermabrasian for rhinophyma, forehead reduction, repair of brow ptosis (supraciliary, mid-forehead or coronal approach), and Ms. Doe will need hair transplant procedures.

### 1.   Allegations Against the City of Philadelphia:

17.   Defendant, City of Philadelphia, is Ms. Doe's employer, and, upon information and belief, operates an exclusion of gender-affirming care and treatment in Ms. Doe's employer-sponsored health insurance plan, despite the City claiming to be a "Sanctuary City" for gender-affirming care and treatment, though the instant case draws that designation into question.

18.  Defendant, City of Philadelphia, offered Ms. Doe benefits to her employment on discriminatory terms.

19.  Defendant, City of Philadelphia, upon information and belief, is responsible for the benefits offered to Ms. Doe as part of her employment, including her health insurance benefits as part of Defendant, City of Philadelphia's, self-funded employer-sponsored health insurance plan.

20.  Defendant, City of Philadelphia, discriminated against Ms. Doe by, upon information and belief, operating an exclusion of gender-affirming care and treatment that is blatantly or overtly discriminatory in the City's employer-sponsored health insurance plan.

21.  Defendant, City of Philadelphia, upon information and belief, funded a discriminatory health insurance plan.

22.  The discriminatory health insurance plan is, upon information and belief, a self-funded Plan.

23.  Upon information and belief, Defendant, City of Philadelphia, elected to exclude gender-affirming care and treatment from its employer-sponsored health insurance plan constituting blatant and overt discrimination against the transgender community, while at the same time claiming to be a "Sanctuary City" for gender-affirming care and treatment.

24.  Upon information and belief, Defendant, City of Philadelphia, was responsible for the exclusion of gender-affirming care and treatment in the City's self-funded employer-sponsored health insurance plan, despite the terms of the policy being blatantly and overtly discriminatory.

25.     Defendant, City of Philadelphia, upon information and belief, was responsible for creating the terms of the employer-sponsored health insurance plan that blatantly discriminated against Ms. Doe and the transgender community.

26.     Upon information and belief, Defendant, City of Philadelphia, had the authority to decide that gender-affirming care and treatment would be covered as part of Defendant, City of Philadelphia's, self-funded employer sponsored health insurance plan.

27.     Despite having the power, upon information and belief, to decide that gender-affirming care and treatment would be covered as part of Defendant, City of Philadelphia's, self-funded employer-sponsored health insurance plan, Defendant, City of Philadelphia, chose to discriminate against Ms. Doe based on her gender identity by excluding gender-affirming care and treatment from its self-funded employer-sponsored health insurance plan.

**2.      Allegations Against Philadelphia Firefighters' and Paramedics Union, I.A.F.F., Local 22 ("Firefighters"):**

28.     Defendant, Independence Blue Cross's, General Counsel, represented to Plaintiff's Counsel that the Firefighters' Plan with the City contained the exclusion of gender-affirming care and treatment, which Independence Blue Cross was allegedly required to enforce.

29.     Upon information and belief, Defendant, Firefighters, represented to this Court that it had no responsibility for the subject employer-sponsored health plan, which is untrue, if the statement from Independence Blue Cross's General Counsel is to be believed.

30.     Defendant, Firefighters, upon information and belief, was responsible for the exclusion of gender-affirming care and treatment in the City's employer-sponsored health insurance plan, despite the terms of the policy being blatantly and overtly

discriminatory.

31.    It is believed and therefore averred that Defendant, Firefighters, is not being truthful about its involvement with the categorical exclusion of gender-affirming care and treatment.

### 3.    Allegations Against Independence Blue Cross:

32.    Ms. Doe sought coverage for services for gender-affirming care and treatment in an attempt to alleviate Ms. Doe's gender dysphoria from Defendant, Independence Blue Cross, a third-party administrator for the Defendant, City of Philadelphia's, self-funded employer-sponsored health insurance plan.

33.    Defendant, Independence Blue Cross, underwrote and administered the Defendant, City of Philadelphia's, self-funded employer-sponsored health insurance plan.

34.    Following the unlawful and discriminatory denial of Plaintiff's request for pre-authorization/preclearance for FFS by Defendant, Independence Blue Cross, Plaintiff was forced to expend time and effort, and unnecessary expense, appealing the decision and gathering documentation in support of her claim, which was known to be a legitimate claim, and yet the claim was unlawfully denied by Defendant, Independence Blue Cross, on account of discrimination based on sex/gender, gender identity, gender stereotyping, and/or disability (gender dysphoria).

35.    Despite Plaintiff providing documentation of Plaintiff's condition from Plaintiff's psychiatric nurse, Plaintiff's first-level appeal/grievance was unlawfully denied by Defendant, Independence Blue Cross, on account of discrimination due to Plaintiff's sex/gender, gender identity, gender stereotyping, and/or disability (gender dysphoria).

36.    Plaintiff was forced to expend time, effort, and unnecessary expense, submitting a

second-level appeal/grievance, which Defendant, Independence Blue Cross, again

arbitrarily denied, on account of discrimination due to Plaintiff's sex/gender, gender

identity, gender stereotyping, and/or disability (gender dysphoria).

37.     Defendant, Independence Blue Cross, forced Plaintiff to go through an arduous process

to secure coverage for FFS and related procedures, in the hope that Plaintiff would

simply give up and go away, when Defendant, Independence Blue Cross, knew and/or

recklessly disregarded that their actions constituted illegal sex stereotyping and violated

Federal, state, and City law.

38.     For example, as recently as in or around late December 2023, Defendant, Independence

Blue Cross, denied Plaintiff's legitimate claim for gender-affirming care and treatment,

and specifically noted, on the denial, that the request was sought, in part, for "**Gender

Affirming Interventions**" (bold in original).  Defendant, Independence Blue Cross,

denied the claim anyway.  Defendant, Independence Blue Cross, had knowledge and/or

recklessly disregarded Ms. Doe's Federally-protected rights to be free from

discrimination and, therefore, Plaintiff is entitled to punitive damages.

39.     Defendant, Independence Blue Cross, did not apply the "functional impairment"

component of its Medical Policy appropriately or correctly in Plaintiff's case.  *See also

Doe v. Independence Blue Cross*, No. 23-1530, ___ F. Supp. 3d ___, 2023 WL 8050471,

at *2, n. 26 (E.D. Pa. Nov. 21, 2023).

40.     Plaintiff's functional impairments consisted of functional impairments in social and

occupational functioning.

41.     Plaintiff's impairments caused her to be unable to function in society.

42.     Plaintiff's impairments caused her to be unable to work without reasonable

accommodation.

43.     The decision to deny coverage to Ms. Doe for FFS, hair transplant, and related

procedures constitutes illegal discrimination against her on account of her being

transgender, based on her gender dysphoria, and/or on the basis of impermissible gender

stereotypes.

### IV.   CLAIMS FOR RELIEF

### COUNT I:
### DISCRIMINATION BASED ON SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ("TITLE VII"), 42 U.S.C. § 2000*e*, et seq. (PLAINTIFF, JANE DOE v. DEFENDANT, CITY OF PHILADELPHIA)

44.     Ms. Doe restates and realleges all previous paragraphs as though fully set forth here.

45.     The acts and omissions described above discriminate on the basis of sex in violation of

Title VII of the Civil Rights Act of 1964 ("Title VII").

46.     Defendant, City of Philadelphia, intentionally discriminated against Ms. Doe and

subjected Ms. Doe to unequal terms, conditions, benefits, and privileges of her

employment, by denying or excluding coverage for facial feminization surgeries and

related procedures as covered services when medically necessary as gender-affirming

care and treatment, from Defendant, City of Philadelphia's, self-funded employer-

sponsored health insurance plan ("the Plan").

47.     Additionally, "employer" as it is defined and used in Title VII is sufficiently broad to

encompass any party who significantly affects access of any individual to employment

opportunities, compensation, terms, conditions, privileges, or benefits, of which health

insurance benefits are included.

48.     It is believed and therefore averred that Defendant, City of Philadelphia, upon

information and belief, exercised extensive control over benefits, which is an important

8

aspect of the employment relationship.

49. An employer cannot delegate an important employer responsibility—benefits—to a corporate shell and evade liability for benefits discrimination for that reason.

50. Defendant, City of Philadelphia, upon information and belief, exercised control over the coverage of gender-affirming care and treatment, and did not permit coverage of gender-affirming care and treatment based on gender stereotyping, discrimination based on sex, and/or discrimination based on gender identity.

51. Defendant, City of Philadelphia, discriminated against Ms. Doe on the basis of Ms. Doe's gender identity, on the basis of Ms. Doe's gender, and based on gender stereotyping, by categorically excluding gender-affirming care and treatment from its employer-sponsored health plan thereby denying coverage to Ms. Doe for FFS and related procedures.

52. A categorical exclusion of gender-affirming care and treatment from an employer-sponsored health plan is blatantly and overtly discriminatory against the transgender community regardless of whether the cosmetic-surgery exclusion is being used.

53. Requiring someone to maintain natal sex characteristics with which they do not identify constitutes overt and blatant sex discrimination against the transgender community regardless of whether the cosmetic-surgery exclusion is being used.

54. Defendant, City of Philadelphia's, discriminatory acts described herein result in disparate treatment of the Defendant, City of Philadelphia's, employees based on sex, gender identity, and gender stereotyping, in violation of Title VII.

55. Defendant, City of Philadelphia, publicly claims to be a "Sanctuary City" for gender-affirming care and treatment, though the instant case draws that designation into

question.

56.     Defendant, City of Philadelphia, engaged in the foregoing discriminatory acts and/or

omissions with malice or with reckless indifference to Ms. Doe's protected rights under

Title VII and therefore punitive damages are warranted against the Defendant, City of

Philadelphia.

57.     Plaintiff suffered loss of income including back and front pay on account of Defendant's

discriminatory denial of insurance coverage, as Plaintiff cannot function in society or

work without FFS and related procedures, as a result of Defendant's discriminatory

denial, which created a barrier to care that effectively required Plaintiff to maintain the

sex characteristics of her sex assigned at birth, and with sex characteristics for a sex with

which she no longer identified, in order to remain employed, constituting sex

discrimination in violation of Title VII.

58.     Plaintiff was directly and proximately caused by Defendant, City of Philadelphia, to

suffer economic harms, emotional distress, mental anguish, pain and suffering,

humiliation and embarrassment, loss of enjoyment of life and life's pleasures, and other

damages, as described more fully herein, on account of the Defendant, City of

Philadelphia's, discriminatory actions, and for which Plaintiff seeks economic damages,

compensatory damages, punitive damages, and other damages described more fully

below, and which are incorporated herein by reference as if the same were set forth

more fully at length herein.

59.     Defendant, City of Philadelphia, intentionally discriminated against Plaintiff by

subjecting Plaintiff to unequal terms, conditions, benefits, and privileges of her

employment, by denying coverage for facial feminization surgeries, procedures, and

related medical treatments, as covered services, when medically necessary as gender-affirming care and treatment, from Defendant, City of Philadelphia's, self-funded employer-sponsored health plan.

**COUNT II:**
**DISCRIMINATION BASED ON SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ("TITLE VII"), 42 U.S.C. § 2000*e*, et seq.**
**(PLAINTIFF, JANE DOE v. DEFENDANT, INDEPENDENCE BLUE CROSS)**

60.    Ms. Doe restates and realleges all previous paragraphs as though fully set forth here.

61.    An agent of an employer may be sued for discrimination under an agency theory of liability.

62.    An employer cannot delegate an important employer responsibility—benefits—to a corporate shell and evade liability for benefits discrimination for that reason.

63.    Defendant, Independence Blue Cross, upon information and belief, exercised control over the coverage of FFS procedures, and did not permit coverage of FFS procedures based on gender stereotyping, discrimination based on sex, and/or discrimination based on gender identity.

64.    Following the unlawful and discriminatory denial of Plaintiff's request for pre-authorization/preclearance for FFS by Defendant, Independence Blue Cross, Plaintiff was forced to expend time and effort, and unnecessary expense, appealing the decision and gathering documentation in support of her claim, which was known to be a legitimate claim, and yet the claim was unlawfully denied by Defendant, Independence Blue Cross, on account of discrimination.

65.    Despite Plaintiff providing documentation of Plaintiff's condition from Plaintiff's psychiatric nurse, Plaintiff's first-level appeal/grievance was unlawfully denied on account of discrimination.

66.    Plaintiff was forced to expend time, effort, and unnecessary expense, submitting a second-level appeal/grievance, which Defendant, Independence Blue Cross, again arbitrarily denied, on account of discrimination.

67.    Defendant, Independence Blue Cross, should be regarded as having knowledge and/or recklessly disregarding Ms. Doe's Federally-protected rights to be free from discrimination by denying Ms. Doe medically-necessary treatments to alleviate her gender dysphoria.

68.    Defendant, Independence Blue Cross, forced Plaintiff to go through an arduous process to secure coverage for FFS and related procedures, in the hope that Plaintiff would simply give up and go away, when Defendant, Independence Blue Cross, knew and/or recklessly disregarded that their actions constituted illegal sex stereotyping and violated Federal, state, and City law.

69.    For example, as recently as in or around late December 2023, Defendant, Independence Blue Cross, denied Plaintiff's legitimate claim for gender-affirming care and treatment, and specifically noted, on the denial, that the request was sought, in part, for "**Gender Affirming Interventions**" (bold in original).  Defendant, Independence Blue Cross, denied the claim anyway.  Defendant, Independence Blue Cross, had knowledge and/or recklessly disregarded Ms. Doe's Federally-protected rights to be free from discrimination and, therefore, Plaintiff is entitled to punitive damages.

70.    Defendant, Independence Blue Cross, did not apply the "functional impairment" component of its Medical Policy appropriately or correctly in Plaintiff's case.  *See also Doe v. Independence Blue Cross*, No. 23-1530, ___ F. Supp. 3d ___, 2023 WL 8050471, at *2, n. 26 (E.D. Pa. Nov. 21, 2023).

71.  Plaintiff's functional impairments consisted of functional impairments in social and occupational functioning.

72.  Plaintiff's impairments caused her to be unable to function in society.

73.  Plaintiff's impairments caused her to be unable to work without reasonable accommodation.

74.  Rejecting Ms. Doe's pre-authorization request for FFS surgeries constitutes illegal discrimination against her on account of her being transgender, based on her gender dysphoria, and/or on the basis of impermissible gender stereotypes.

**COUNT III:**
**DISCRIMINATION BASED ON SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ("TITLE VII"), 42 U.S.C. § 2000*e*, et seq.**
**(PLAINTIFF, JANE DOE v. DEFENDANT, PHILADELPHIA FIREFIGHTERS' & PARAMEDICS' UNION, I.A.F.F., LOCAL 22)**

75.  Ms. Doe restates and realleges all previous paragraphs as though fully set forth here.

76.  The decision to deny coverage to Ms. Doe for FFS surgeries constitutes illegal discrimination against her on account of her being transgender, based on her gender dysphoria, and/or on the basis of impermissible gender stereotypes.

77.  Defendant, Firefighters' and Paramedics' Union, I.A.F.F., Local 22, upon information and belief, exercised control over the coverage of gender-affirming care and treatment, and did not permit coverage of gender-affirming care and treatment based on gender stereotyping, discrimination based on sex, and/or discrimination based on gender identity.

78.  Defendant, Independence Blue Cross's, General Counsel, represented to Plaintiff's Counsel that the Firefighters' Plan with the City contained the exclusion of gender-affirming care and treatment which Defendant, Independence Blue Cross, was allegedly

13

required to enforce.

79.     Defendant, Firefighters, represented to this Court that it had no responsibility for the

subject employer-sponsored health plan, which is untrue, if the statement from

Independence Blue Cross's General Counsel is to be believed.

80.     Defendant, Firefighters, upon information and belief, was responsible for the categorical

exclusion of gender-affirming care and treatment in the City's employer-sponsored

health plan, which the City acceded to, despite the terms of the policy being blatantly

and overtly discriminatory.

81.     A categorical exclusion of gender-affirming care and treatment from an employer-

sponsored health plan is blatantly and overtly discriminatory against the transgender

community regardless of whether the cosmetic-surgery exclusion is being used.

82.     Requiring someone to maintain natal sex characteristics with which they do not identify

constitutes overt and blatant sex discrimination against the transgender community

regardless of whether the cosmetic-surgery exclusion is being used.

**COUNT IV:**
**DISCRIMINATION BASED ON GENDER IDENTITY IN VIOLATION OF THE**
**PHILADELPHIA FAIR PRACTICES ORDINANCE ("PFPO"), CHAPTER 9-1100,**
**SECTION 9-1101, <u>et seq.</u>, OF THE PHILADELPHIA CODE**
**<u>(PLAINTIFF, JANE DOE v. DEFENDANT, CITY OF PHILADELPHIA)</u>**

83.     Ms. Doe restates and realleges all previous paragraphs as though fully set forth here.

84.     Defendant, City of Philadelphia, discriminated against Ms. Doe in violation of the

PFPO, at Section 9-1101, <u>et seq.</u>, of the Philadelphia Code.

85.     Defendant, City of Philadelphia, constitutes an "employer" within the meaning of the

PFPO at § 9-1102(h).

86.     Defendant, City of Philadelphia, engaged in "discrimination" as defined by the PFPO

14

which prohibits discrimination that includes "[a]ny direct or indirect practice of exclusion . . . refusal," or "denial," "on the basis of actual or perceived . . . sex," or "gender identity."  § 9-1102(e).

87.   The PFPO explicitly protects Plaintiff from discrimination on the basis of her "gender identity," § 9-1102(e), therefore prohibits the discriminatory conduct complained of herein.

88.   The PFPO prohibits discrimination on the basis of sex, gender, gender identity, gender transition, and gender stereotyping.

89.   An employer cannot delegate an important employer responsibility—benefits—to a corporate shell and evade liability for benefits discrimination for that reason.

90.   Defendant, City of Philadelphia, discriminated against Ms. Doe on the basis of Ms. Doe's gender identity, on the basis of Ms. Doe's gender, and based on gender stereotyping, by operating an overtly discriminatory employer-sponsored health insurance plan where Ms. Doe was denied coverage for FFS and related procedures.

91.   Defendant, City of Philadelphia, engaged in the foregoing discriminatory acts and/or omissions with malice or with reckless indifference to Doe's protected rights and therefore punitive damages are warranted against Defendant, City of Philadelphia.

92.   Plaintiff was directly and proximately caused by Defendant, City of Philadelphia, to suffer economic harms, emotional distress, mental anguish, pain and suffering, humiliation and embarrassment, loss of enjoyment of life and life's pleasures, and other damages, as described more fully herein, on account of the Defendant, City of Philadelphia's, discriminatory actions, and for which Plaintiff seeks economic damages, compensatory damages, punitive damages, and other damages described more fully

below, and which are incorporated herein by reference as if the same were set forth more fully at length herein.

**COUNT V:**
**DISCRIMINATION BASED ON GENDER IDENTITY IN VIOLATION OF THE PHILADELPHIA FAIR PRACTICES ORDINANCE ("PFPO"), CHAPTER 9-1100, SECTION 9-1101, et seq., OF THE PHILADELPHIA CODE (PLAINTIFF, JANE DOE v. DEFENDANT, INDEPENDENCE BLUE CROSS)**

93.    Ms. Doe restates and realleges all previous paragraphs as though fully set forth here.

94.    Defendant, Independence Blue Cross, excluded, refused, and/or denied coverage to Plaintiff for FFS, hair transplant, and related procedures "on the basis of actual or perceived . . . sex," or "gender identity," in violation of § 9-1102(e) of the PFPO.

95.    An agent of an employer may be sued for discrimination under an agency theory of liability.

96.    An employer cannot delegate an important employer responsibility—benefits—to a corporate shell and evade liability for benefits discrimination for that reason.

97.    Defendant, Independence Blue Cross, upon information and belief, exercised control over the coverage of FFS procedures, and did not permit coverage of FFS procedures based on gender stereotyping, discrimination based on sex, and/or discrimination based on gender identity, in violation of the PFPO.

98.    Following the unlawful and discriminatory denial of Plaintiff's request for pre-authorization/preclearance for FFS, Plaintiff was forced to expend time and effort, and unnecessary expense, appealing the decision and gathering documentation in support of her claim, which was known to be a legitimate claim, and yet the claim was unlawfully denied by Defendant, Independence Blue Cross, on account of discrimination based on sex/gender, gender identity, gender stereotyping, and/or disability (gender dysphoria).

16

99.   Despite Plaintiff providing documentation of Plaintiff's condition from Plaintiff's psychiatric nurse, Plaintiff's first-level appeal/grievance was unlawfully denied on account of discrimination due to Plaintiff's sex/gender, gender identity, gender stereotyping, and/or disability (gender dysphoria).

100.  Plaintiff was forced to expend time, effort, and unnecessary expense, submitting a second-level appeal/grievance, which Defendant, Independence Blue Cross, again arbitrarily denied, on account of discrimination due to Plaintiff's sex/gender, gender identity, gender stereotyping, and/or disability (gender dysphoria).

101.  Defendant, Independence Blue Cross, forced Plaintiff to go through an arduous process to secure coverage for FFS and related procedures, in the hope that Plaintiff would simply give up and go away, when Defendant, Independence Blue Cross, knew and/or recklessly disregarded that their actions constituted illegal sex stereotyping and violated Federal, state, and City law.

102.  For example, as recently as in or around late December 2023, Defendant, Independence Blue Cross, denied Plaintiff's legitimate claim for gender-affirming care and treatment, and specifically noted, on the denial, that the request was sought, in part, for "**Gender Affirming Interventions**" (bold in original).  Defendant, Independence Blue Cross, denied the claim anyway.  Defendant, Independence Blue Cross, had knowledge and/or recklessly disregarded Ms. Doe's Federally-protected rights to be free from discrimination and, therefore, Plaintiff is entitled to punitive damages.

103.  Defendant, Independence Blue Cross, did not apply the "functional impairment" component of the Policy appropriately or correctly in Plaintiff's case.  *See also Doe v. Independence Blue Cross*, No. 23-1530, ___ F. Supp. 3d ___, 2023 WL 8050471, at *2,

n. 26 (E.D. Pa. Nov. 21, 2023).

104. Plaintiff's functional impairments consisted of functional impairments in social and occupational functioning.

105. Plaintiff's impairments caused her to be unable to function in society.

106. Plaintiff's impairments caused her to be unable to work without reasonable accommodation.

107. Rejecting Ms. Doe's pre-authorization request for FFS surgeries constitutes illegal discrimination against her on account of her being transgender, based on her gender dysphoria, and/or on the basis of impermissible gender stereotypes.

**COUNT VI:**
**DISCRIMINATION BASED ON GENDER IDENTITY IN VIOLATION OF THE PHILADELPHIA FAIR PRACTICES ORDINANCE ("PFPO"), CHAPTER 9-1100, SECTION 9-1101, et seq., OF THE PHILADELPHIA CODE (PLAINTIFF, JANE DOE v. DEFENDANT, PHILADELPHIA FIREFIGHTERS' & PARAMEDICS' UNION, I.A.F.F., LOCAL 22)**

108. Ms. Doe restates and realleges all previous paragraphs as though fully set forth here.

109. Defendant, Firefighters' and Paramedics' Union, I.A.F.F., Local 22, upon information and belief, exercised control over the coverage of gender-affirming care and treatment and did not permit coverage of gender-affirming care and treatment based on gender stereotyping, discrimination based on sex, and/or discrimination based on gender identity.

110. Defendant, Independence Blue Cross's, General Counsel, represented to Plaintiff's Counsel that the Firefighters' Plan with the City contained the categorical exclusion of gender-affirming care and treatment which Independence Blue Cross was allegedly required to enforce.

111. Defendant, Firefighters, represented to this Court that it had no responsibility for the

subject employer-sponsored health plan, which is untrue, if the statement from Independence Blue Cross's General Counsel is to be believed.

112.    Defendant, Firefighters, upon information and belief, was responsible for the categorical exclusion of gender-affirming care and treatment in the City's employer-sponsored health plan, which the City acceded to, despite the terms of the policy being blatantly and overtly discriminatory.

113.    A categorical exclusion of gender-affirming care and treatment from an employer-sponsored health plan is blatantly and overtly discriminatory against the transgender community regardless of whether the cosmetic-surgery exclusion is being used.

114.    Requiring someone to maintain natal sex characteristics with which they do not identify constitutes overt and blatant sex discrimination against the transgender community regardless of whether the cosmetic-surgery exclusion is being used.

**COUNT VII:**
**DISCRIMINATION BASED ON SEX IN VIOLATION OF SECTION 1557 OF THE**
**AFFORDABLE CARE ACT, 42 U.S.C. § 18116**
**(PLAINTIFF, JANE DOE v. DEFENDANT, INDEPENDENCE BLUE CROSS)**

115.    Ms. Doe restates and realleges all previous paragraphs as though fully set forth here.

116.    Congress prohibited sex discrimination in any health care program and activity, including policies of insurance issued on behalf of health insurance companies, that includes the Defendant, Independence Blue Cross, at 42 U.S.C. § 18116, also known as Section 1557, the Patient Protection and Affordable Care Act, or Affordable Care Act.

117.    It is believed and therefore averred that Defendant, Independence Blue Cross, received Federal financial assistance, including, upon information and belief, for their health programs or activities, and are therefore covered entities under Section 1557 of the Affordable Care Act.

19

118.   It is believed and therefore averred that Defendant, Independence Blue Cross, is a health

insurance issuer, with respect to Defendant, City of Philadelphia's, self-funded

employer-sponsored health plan, and is therefore a covered entity within the meaning of

Section 1557 of the Affordable Care Act.

119.   42 U.S.C. § 18116 covers the Defendant, Independence Blue Cross, as Section 18116

provides, in pertinent part, as follows:

§ 18116. Nondiscrimination.

(a) In general.

> Except as otherwise provided for in this title (or an amendment made by this title), an individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), or section 794 of title 29, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments).

42 U.S.C. § 18116(a).

120.   Section 1557 of the Affordable Care Act, along with its implementing regulations, at 45

CFR § 92, et seq., 81 FR 31375-473 (May 18, 2016), have adopted the ACA non-

discrimination rule, which prohibits discrimination based on sex, gender identity, and

gender expression, by referring to and incorporating therein the prohibitions of Title IX

(20 U.S.C. § 1681) against sex discrimination including its enforcement provisions.

121.   According to 45 CFR § 92.1, "Section 1557 requires the application of the enforcement

mechanisms under Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.),

Title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age

Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), and Section 504 of the

Rehabilitation Act of 1973 (29 U.S.C. 794) for purposes of violations of Section 1557

and this part."  45 CFR § 92.1 (Subpart A – General Provisions).

122.    45 CFR § 92.2 further provides in pertinent part:

> Except as provided in Title I of the Patient Protection and Affordable Care Act (or any amendment thereto), an individual shall not, on any of the grounds set forth in paragraph (b) of this section, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any health program or activity, any part of which is receiving Federal financial assistance (including credits, subsidies, or contracts of insurance) provided by the U.S. Department of Health and Human Services; or under any program or activity administered by the Department under such Title; or under any program or activity administered by any entity established under such Title.

45 CFR § 92.2.

123.    Defendant, Independence Blue Cross, was required to certify compliance with the

prohibitions against sex discrimination in 42 U.S.C. § 18116 in order to participate in

the Commonwealth of Pennsylvania's State Health Insurance Exchange, under 45

C.F.R. § 92.4:

> Assurances.

> (a) Assurances.  An entity applying for Federal financial assistance to which this part applies shall, as a condition of any application for Federal financial assistance, submit an assurance, on a form specified by the Director of the Department's Office for Civil Rights, that the entity's health programs or activities will be operated in compliance with section 1557 and this part.  A health insurance issuer seeking certification to participate in an Exchange or a State seeking approval to operate a State Exchange to which section 1557 or this part applies shall, as a condition of certification or approval, submit an assurance, on a form specified by the Director of the Department's Office for Civil Rights, that the health program or activity will be operated in compliance with section 1557 and this part.  An applicant or entity may incorporate this assurance by reference in subsequent applications to the Department for Federal financial assistance or requests for certification to participate in an Exchange or approval to operate a State Exchange.

45 C.F.R. § 92.4.

124.    Section 1557 provides that "an individual shall not, on the ground prohibited under

…Title IX of the Education Amendments of 1972 (20 U.S.C. 1681, <u>et seq.</u>)" – which prohibits discrimination "on the basis of sex" – "be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance."  42 U.S.C. § 18116(a).

125.  The Department of Health and Human Services' ("HHS") regulations including the ACA non-discrimination rule apply to "covered entities" and prohibit discrimination on the basis of gender identity. 45 C.F.R. §§ 92.4, 92.207.

126.  Defendant, Independence Blue Cross, constitutes an issuer of insurance products, plans, and benefits that receive Federal financial assistance for those products, plans, and benefits.

127.  Defendant, Independence Blue Cross, constitutes a "covered entity" under 45 C.F.R. § 92.4.3.

128.  Discrimination on the basis of gender identity, transgender status, gender transition, or gender nonconformity constitutes discrimination on the basis of "sex" under Section 1557.

129.  Ms. Doe has been wrongfully subjected to discrimination by Defendant, Independence Blue Cross, because of her sex.

130.  Plaintiff was directly and proximately caused by Defendant, Independence Blue Cross, to suffer economic harms and other damages, as described more fully herein on account of the Defendant, Independence Blue Cross's, discriminatory actions, and for which Plaintiff seeks economic and other damages.

**COUNT VIII:**
**DISCRIMINATION BASED ON DISABILITY IN VIOLATION OF SECTION 1557 OF**
**THE AFFORDABLE CARE ACT, 42 U.S.C. § 18116**
**(PLAINTIFF, JANE DOE v. DEFENDANT, INDEPENDENCE BLUE CROSS)**

131.   Ms. Doe restates and realleges all previous paragraphs as though fully set forth here.

132.   Ms. Doe has a disability, gender dysphoria, or "GD," covered within the meaning of

Section 1557 of the Affordable Care Act.

133.   Congress prohibited discrimination in any health care program and activity, including

policies of insurance issued on behalf of health insurance companies, on the basis of

disability, that includes the Defendant, Independence Blue Cross, at 42 U.S.C. § 18116,

also known as Section 1557, the Affordable Care Act.

134.   42 U.S.C. § 18116 provides, in pertinent part, as follows;

§ 18116. Nondiscrimination.

(a) In general.

Except as otherwise provided for in this title (or an amendment made by this
title), an individual shall not, on the ground prohibited under title VI of the Civil
Rights Act of 1964 (42 U.S.C. 2000d et seq.), title IX of the Education
Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination Act of
1975 (42 U.S.C. 6101 et seq.), *__or section 794 of title 29 [the Rehabilitation Act],__*
be excluded from participation in, be denied the benefits of, or be subjected to
discrimination under, any health program or activity, any part of which is
receiving Federal financial assistance, including credits, subsidies, or contracts
of insurance, or under any program or activity that is administered by an
Executive Agency or any entity established under this title (or amendments).

42 U.S.C. § 18116(a) (emphasis added).

135.   According to 45 CFR § 92.1, "Section 1557 requires the application of the enforcement

mechanisms under Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.),

Title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age

Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), and Section 504 of the

Rehabilitation Act of 1973 (29 U.S.C. 794) for purposes of violations of Section 1557 and this part."  45 CFR § 92.1 (Subpart A – General Provisions).

136.  Defendant, Independence Blue Cross, was required to certify compliance with the prohibitions against discrimination based on disability as set forth in 42 U.S.C. § 18116 in order to participate in the Commonwealth of Pennsylvania's State Health Insurance Exchange, under 45 C.F.R. § 92.4:

> Assurances.
>
> (a) Assurances.  An entity applying for Federal financial assistance to which this part applies shall, as a condition of any application for Federal financial assistance, submit an assurance, on a form specified by the Director of the Department's Office for Civil Rights, that the entity's health programs or activities will be operated in compliance with section 1557 and this part.  A health insurance issuer seeking certification to participate in an Exchange or a State seeking approval to operate a State Exchange to which section 1557 or this part applies shall, as a condition of certification or approval, submit an assurance, on a form specified by the Director of the Department's Office for Civil Rights, that the health program or activity will be operated in compliance with section 1557 and this part.  An applicant or entity may incorporate this assurance by reference in subsequent applications to the Department for Federal financial assistance or requests for certification to participate in an Exchange or approval to operate a State Exchange.

45 C.F.R. § 92.4

137.  The Department of Health and Human Services ("HHS") regulations including the ACA non-discrimination rule apply to "covered entities" and prohibit discrimination on the basis of actual or perceived disability.  45 C.F.R. §§ 92.4, 92.207.

138.  Defendant, Independence Blue Cross, constitutes a "covered entity" under 45 C.F.R. § 92.4.3.

139.  Ms. Doe has been wrongfully subjected to discrimination by Defendant, Independence Blue Cross, because of her disability (gender dysphoria).

140.  Defendant, Independence Blue Cross, upon information and belief, incorrectly applied

24

the "functional impairment" provision of its Medical Policy, requiring Plaintiff to state a physical deformity, disfigurement, abnormality, or impairment, when Plaintiff had demonstrated functional impairments in social and occupational functioning, which was sufficient.

141.   Defendant, Independence Blue Cross, denied medically-necessary care and treatment for Ms. Doe's gender dysphoria by stating that she was attempting to improve her appearance, when she was not, and instead was seeking medically-necessary care and treatment for her gender dysphoria, which Defendant, Independence Blue Cross, denied on account of discrimination due to Ms. Doe's gender-dysphoria disability.

142.   Plaintiff was directly and proximately caused by Defendant, Independence Blue Cross, to suffer economic harms and other damages, as described more fully herein on account of the Defendant, Independence Blue Cross's, discriminatory actions, and for which Plaintiff seeks economic and other damages.

**COUNT IX:**
**DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES**
**ACT ("ADA"), AS AMENDED, 42 U.S.C. § 12101, *et seq.***
**(PLAINTIFF, JANE DOE v. DEFENDANT, CITY OF PHILADELPHIA)**

143.   Ms. Doe restates and realleges all previous paragraphs as though fully set forth here.

144.   Defendant, City of Philadelphia, discriminated against Ms. Doe based on her disability—gender dysphoria ("GD")—in violation of Title I of the ADA, 42 U.S.C. § 12112(a), et seq.—which prohibits employment discrimination including the unequal and discriminatory provision of benefits based on disability.

145.   Plaintiff was an employee of Defendant, City of Philadelphia, pursuant to 42 U.S.C. § 12111(4).

146.   Plaintiff received health insurance coverage through the City's employer-sponsored

healthcare plan, upon information and belief, controlled by Defendant, City of Philadelphia.

147.    Defendant, City of Philadelphia, is covered under Title I of the ADA, 42 U.S.C. § 12112(a), et seq.

148.    It is believed and therefore averred that Defendant, City of Philadelphia, had control over the coverage of gender-affirming care and treatment but did not permit coverage of gender-affirming care and treatment based on discrimination on account of Ms. Doe's disability (gender dysphoria).

149.    Ms. Doe is a qualified individual under the ADA who "with or without reasonable accommodation, can perform the essential functions of the employment position" she holds.  42 U.S.C. § 12111(8).

150.    Ms. Doe has a disability, gender dysphoria, or GD, within the meaning of the ADA. Ms. Doe's gender dysphoria constitutes a disability under the ADA because it is a physical or mental impairment that substantially limits one or more major life activities. 42 U.S.C. § 12102(1).

151.    The substantial limitation on Doe's major life activities include limitations in social and occupational functioning.

152.    Ms. Doe was clinically diagnosed with GD and has clinically significant distress associated with being transgender.

153.    The exclusion of gender-affirming care and treatment violates the ADA by discriminating on the basis of disability in the denial of coverage for treatment meant to alleviate Ms. Doe's disability (gender dysphoria).

154.    The so-called Gender Identity Disorder ("GID") exclusion does not apply to Ms. Doe

because she has a physical impairment in line with the statute, the ADA.

155. Assuming *arguendo* Ms. Doe does not state a physical impairment, which is denied, Ms. Doe states a mental impairment which is covered by the statute, in light of the fact that the so-called GID exclusion cannot be upheld as constitutional.

156. Section 12211(b) of the ADA, the so-called GID exclusion, provides that the definition of a disability does not include "transvestism, transsexualism, pedophilia, exhibitionism, voyeurism, ***gender identity disorders not resulting from physical impairments***, [and] other sexual behavior disorders."  42 U.S.C. § 12211(b) (emphasis added).

157. The "Gender Identity Disorder" ("GID") exclusion codified at 42 U.S.C. § 12211(b) is discriminatory and violates due process.

158. Ms. Doe seeks redress for Defendant, City of Philadelphia's, violation of her rights under 42 U.S.C. §12133.

159. Defendant, City of Philadelphia, acted with malice, reckless indifference, and/or deliberate indifference to Ms. Doe's rights under the ADA and therefore punitive damages are warranted.

**COUNT X:**
**DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES**
**ACT ("ADA"), AS AMENDED, 42 U.S.C. § 12101, *et seq.***
**(PLAINTIFF, JANE DOE v. DEFENDANT, PHILADELPHIA FIREFIGHTERS' &**
**PARAMEDICS' UNION, I.A.F.F., LOCAL 22)**

160. Ms. Doe restates and realleges all previous paragraphs as though fully set forth here.

161. Defendant, Firefighters' and Paramedics' Union, I.A.F.F., Local 22, upon information and belief, exercised control over the coverage of gender-affirming care and treatment in Ms. Doe's employer-sponsored health insurance plan, and did not permit coverage of gender-affirming care and treatment based on discrimination on account of disability

(gender dysphoria).

162. Defendant, Independence Blue Cross's, General Counsel, represented to Plaintiff's Counsel that the Firefighters' Plan with the City contained the exclusion of gender-affirming care and treatment which Independence Blue Cross was allegedly required to enforce.

163. Defendant, Firefighters, represented to this Court that it had no responsibility for the subject employer-sponsored health plan, which is untrue, if the statement from Independence Blue Cross's General Counsel is to be believed.

164. Defendant, Firefighters, upon information and belief, was responsible for the categorical exclusion of gender-affirming care and treatment in the City's employer-sponsored health plan, which the City acceded to, despite the terms of the policy being blatantly and overtly discriminatory.

165. A categorical exclusion of gender-affirming care and treatment from an employer-sponsored health plan is blatantly and overtly discriminatory against the transgender community regardless of whether the cosmetic-surgery exclusion is being used.

166. The "Gender Identity Disorder" ("GID") exclusion codified at 42 U.S.C. § 12211(b) is discriminatory and violates due process.

## V.   RELIEF REQUESTED

167. Plaintiff seeks the following damages or other relief in this action individually and/or jointly and severally, on account of the illegal and discriminatory acts complained of herein, to the extent permitted by applicable law:

    a.   Economic damages;

    b.   Actual damages;

c.      Out-of-pocket costs and expenses;

d.      Incidental damages;

e.      Consequential damages;

f.      Compensatory damages including but not limited to humiliation and embarrassment, pain and suffering, loss of enjoyment of life and life's pleasures, exacerbated gender dysphoria ("GD"), negative body image and negative self-view, suicide ideation, psychological trauma, mental anguish, and emotional distress, under Title VII, the PFPO, and the ADA.

g.      Punitive damages under Title VII, the PFPO, and the ADA.

h.      An award of reasonable attorneys' fees, reasonable expert fees, and the costs and expenses incurred in this action, pursuant to 42 U.S.C. § 1988, and/or as otherwise provided by applicable law;

i.      Pre- and post-judgment interest;

j.      An order from the Court for equitable and/or injunctive relief to require the Defendant, City of Philadelphia, not to commit benefits discrimination in the future, and that the action of the Defendant, City of Philadelphia, complained of herein, constitutes an adverse employment action.

k.      An order from the Court for equitable and/or injunctive relief to require the Defendants, City of Philadelphia and/or Firefighters, to insure Plaintiff and other people who are transgender with gender dysphoria for facial feminization ("FFS") surgeries, procedures, medical treatments, including hair transplant procedures, on an equal and non-discriminatory basis; to adopt and enforce a written policy, procedure, or guideline to this effect;

and to perform necessary training and education related thereto;

l.    An order for the Defendant, Independence Blue Cross, to perform a re-evaluation of Plaintiff's claim, providing that Plaintiff is covered for all FFS and related procedures wrongfully denied, and providing that Plaintiff will be covered for FFS surgeries, procedures, and medical benefits, and that all benefits will be paid moving forward;

m.    An order for Defendant, City of Philadelphia, to hold an LGBT sensitivity training;

n.    An order for Defendant, Independence Blue Cross, to hold an LGBT sensitivity training;

o.    An order for Defendant, Firefighters, to hold an LGBT sensitivity training;

p.    An order that Defendant, Independence Blue Cross, will adopt and enforce a written policy that the preferred name that is consistent with the claimant's gender identity will be used to refer to the claimant throughout the claims process.

q.    Any such further relief as the Court may deem just, proper, and equitable.

## JURY DEMAND

Plaintiff hereby requests a trial by jury of eight (8) members on all counts so triable.

DATED:  <u>05/18/2024</u>          Respectfully submitted,

Justin Robinette, Esquire
PA Supreme Court I.D. No. 319829
One Liberty Place,
1650 Market Street, Suite 3600
PMB #2494

Philadelphia, PA 19103
Tel: (267) 595-6254
Fax: (267) 592-3067
Justin@JRobinetteLaw.com

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I, <u>Justin Robinette, Esquire</u>, attorney for the Plaintiff in the above captioned matter,

hereby certify that a true and correct copy of the foregoing document was filed with the Court

and served on all counsel of record via electronic mail.

Respectfully submitted,


DATED: <u>05/18/2024</u>        BY:    *<u>/s/ Justin Robinette, Esquire</u>*
                                    Justin Robinette, Esquire
                                    *Attorney for Plaintiff*