**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JANE DOE : | **Case No. 2:24-cv-00468-WB** |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| CITY OF PHILADELPHIA; : | |
| INDEPENDENCE BLUE CROSS; : | |
| PHILADELPHIA FIREFIGHTERS' & : | |
| PARAMEDICS' UNION, I.A.F.F., LOCAL 22, : | |
| : | |
| Defendants. : | |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2024, upon consideration of the Motion of Defendant, Independence Blue Cross, to Dismiss Plaintiff's Second Amended Complaint, and any response thereto, it is hereby **ORDERED** that Defendant's Motion is **GRANTED** and Plaintiff's Second Amended Complaint is **DISMISSED** with prejudice as to Independence Blue Cross.

**BY THE COURT:**

_____
                                                                    J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| JANE DOE | : | |
| Plaintiff, | : | **Case No. 2:24-cv-00468-WB** |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA; | : | |
| INDEPENDENCE BLUE CROSS; | : | |
| PHILADELPHIA FIREFIGHTERS' & | : | |
| PARAMEDICS' UNION, I.A.F.F., LOCAL 22, | : | |
| | : | |
| Defendants. | : | |

**MOTION OF DEFENDANT INDEPENDENCE BLUE CROSS
TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Defendant, Independence Blue Cross ("Independence" or "Defendant"), hereby

moves this Court pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to

dismiss Plaintiff's Second Amended Complaint in its entirety as to Independence

because (1) Plaintiff has not pled that Independence is her employer or an agent of her

employer pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") and the

Philadelphia Fair Practices Ordinance (the "PFPO"); (2) Plaintiff failed to exhaust the

requisite administrative remedies prior to bringing her claims under the Philadelphia Fair

Practices Ordinance; (3) Plaintiff has not pled an adverse employment action pursuant

to Title VII and the PFPO; and (4) Plaintiff has not pled any intentional acts of

discrimination to state claims for sex and disability discrimination under the Affordable

Care Act.  The grounds for this Motion are set forth in full in the accompanying

Memorandum of Law.

1

**WHEREFORE**, Independence respectfully requests that this Court grant its Motion to Dismiss Plaintiff's Second Amended Complaint in its entirety, with prejudice, as to Independence and enter the attached proposed Order.

Respectfully submitted,

**TUCKER LAW GROUP, LLC**

Date: June 3, 2024                          /s/ Joe H. Tucker
                                            Joe H. Tucker, Jr., Esquire
                                            Nancy Fisher Onaderu, Esquire
                                            Ten Penn Center
                                            1801 Market Street, Suite 2500
                                            Philadelphia, PA 19103
                                            (215) 875-0609
                                            Attorneys for Defendant,
                                            Independence Blue Cross

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JANE DOE | : | |
| | : | **Case No. 2:24-cv-00468-WB** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA; | : | |
| INDEPENDENCE BLUE CROSS; | : | |
| PHILADELPHIA FIREFIGHTERS' & | : | |
| PARAMEDICS' UNION, I.A.F.F., LOCAL 22, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT INDEPENDENCE BLUE
CROSS'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

   Defendant, Independence Blue Cross ("Independence" or "Defendant")

respectfully submits this Memorandum of Law in support of its Motion to Dismiss

Plaintiff's Second Amended Complaint (the "Second Amended Complaint" or "Compl.")

in its entirety, with prejudice, as to Independence.

## **<u>TABLE OF CONTENTS</u>**

I.     INTODUCTION…………………………………………………………… 3

II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY……………………... 4

III.   ARGUMENT…………………………………………………………… 6

       A.  Legal Standard…………………………………………………….. 6

       B.  Plaintiff Cannot Bring Claims under Title VII or the PFPO
           Against Independence because It Is Not Plaintiff's Employer
           or an Agent of Plaintiff's Employer…………………………………….. 7

       C.  Plaintiff Fails to State a Claim under the PFPO because
           She Did Not Exhaust the Requisite Administrative Remedies………………… 10

       D.  Plaintiff's Claims under Title VII and the PFPO Fail
           to Allege an Adverse Employment Action…………………………………10

       E.  Plaintiff Fails to State a Claim for Sex or Disability Discrimination
           Pursuant to the Affordable Care Act…………………………………….12

           1.  Plaintiff Has Not Alleged Any Intentional Acts of Sex-Based
               Discrimination…………………………………………………….13

           2.  Plaintiff Has Not Alleged Any Acts of Disability-Based
               Discrimination…………………………………………………….19

IV.    CONCLUSION…………………………………………………….... 21

## I.  __INTRODUCTION__

Plaintiff is dissatisfied with Independence's administration of Plaintiff's health insurance coverage in accordance with the terms of Plaintiff's health benefits plan. Plaintiff now seeks reversal of that decision by asserting claims for discrimination. Plaintiff is a transgender woman who has gender dysphoria.  She alleges that Defendant Independence discriminated against her when it denied coverage for cosmetic surgery, that was not medically necessary under the terms of her plan.  No discrimination could have occurred, however, because at the time of the determination, no person insured under this plan, regardless of gender or gender identity, was eligible for coverage for cosmetic surgery, absent certain functional impairments that Plaintiff does not claim to have.  As a result, Plaintiff's claims for discrimination under Title VII, the PFPO, and the ACA all fail, and the Second Amended Complaint should be dismissed with prejudice, as to Independence.

As an aside, but fundamentally important to the background of this case, Plaintiff was in the middle of appealing Independence's denial of Plaintiff's request for preauthorization for her facial feminization surgery when she inexplicably withdrew her appeal on December 27, 2023. Not coincidentally, Plaintiff's counsel was specifically informed months earlier that Independence would offer coverage for facial feminization surgery as a medical benefit, beginning January 1, 2024. Plaintiff's counsel has now disingenuously and in bad faith asserted that he will not allow his client to seek the medical services of a now covered benefit.

3

## II.   <u>FACTUAL BACKGROUND[1] AND PROCEDURAL HISTORY</u>

Plaintiff, a firefighter for the City of Philadelphia (the "City"), is a transgender woman who was diagnosed with gender dysphoria ("GD"), a mental health disorder in which Plaintiff experiences feelings of incongruence between her expressed gender identity and the sex she was assigned at birth.  Compl. at ¶¶ 11-15.  At all times relevant to her claims, Plaintiff was a member of a self-funded health benefits plan funded by her local union, the Philadelphia Firefighters' and Paramedics' Union, I.A.F.F., Local 22 (the "Union"), and administered by Independence (the "Plan"). Plaintiff sought coverage for Facial Feminization Surgery ("FFS"), hair transplants, and related procedures.  <u>Id</u>. at ¶ 16.  Defendant Independence denied coverage for these services as not medically necessary under the terms of Plaintiff's Plan.  <u>Id.</u> at ¶¶ 38-39. Plaintiff alleges that Defendant Independence incorrectly applied the terms of the Plan and discriminated against Plaintiff because of her gender/sex and disability.  <u>Id.</u>

The Plan at issue covered "medically necessary" gender-affirming care.  <u>See</u> Independence's Medical Policy Bulletin and Personal Choice Health Benefits Program (the "Plan"), attached hereto as Exhibit 1.[2]  With respect to the treatment of GD, all of the following procedures were considered medically necessary and were covered under

---

[1] The facts set forth in Plaintiff's Second Amended Complaint are accepted as true only for purposes of this Motion in accordance with the requirements under Federal Rule of Procedure 12(b)(6). Independence expressly reserves the right to dispute at trial any of Plaintiff's factual allegations that are recited herein.

[2] Although Plaintiff references the Medical Policy Bulletin and her health benefits plan throughout the Second Amended Complaint, Plaintiff did not attach these documents to the Second Amended Complaint. The Third Circuit has held that the Court may refer to an "undisputedly authentic document" in a ruling on a Motion to Dismiss if it is referenced in plaintiff's complaint and attached to defendant's motion without converting the motion to a motion for summary judgment, so far as neither party disputes its authenticity.  <u>See</u> <u>Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993); <u>see also</u> <u>Pryor v. NCAA</u>, 288 F.3d 548, 560 (3d Cir. 2002).

the terms of the Plan if the member met certain criteria: bilateral mastectomy; bilateral reduction mammoplasty; breast augmentation; nipple reconstruction; genital reconstructive surgery; hair removal/electrolysis during skin preparation for gender reconstructive surgery; puberty-suppressing hormones; continuous hormone-replacement therapy; and certain garments.  Ex. 1 at pp. 1-3.  The Plan also covered "[g]ender-specific services [that are] medically necessary for transgender individuals as appropriate to their anatomy (e.g., mammograms, prostate cancer screening)."  Id. at p. 3.

There were, however, limits on what the Plan covered. The Plan had a general benefit contract exclusion of "[c]osmetic surgery."  Id. at p. 34.  Cosmetic procedures were specifically not covered when they were done "to improve the appearance of any portion of the body; and [f]rom which no improvement in physiologic function can be expected."  Id.  The Plan only covered such procedures if they were to correct "[a] condition resulting from an accident; and [f]unctional impairment which results from a covered disease, injury or congenital birth defect."  Id.  As such, Independence denied coverage to Plaintiff for the procedures she requested based on the plain language of the Plan.

In the context of gender affirming care, this general exclusion is further discussed in the Medical Policy Bulletin, which states in its "Potentially Cosmetic" section:

> The following procedures/therapies may be performed in combination with other surgeries for the treatment of gender dysphoria and are considered cosmetic or potentially cosmetic services, unless medical necessity demonstrating a functional impairment can be identified.  Services that are cosmetic, following medical necessity review, are a benefit contract exclusion for all products of the Company and, therefore, not eligible for reimbursement consideration.

Id. at p. 4.  The list of procedures/therapies that were considered cosmetic or potentially cosmetic include, for example, facial masculinizing/feminizing surgeries (e.g., facial bone reduction), and hair reconstruction (e.g., hair removal/electrolysis (except during skin preparation for gender reconstructive surgery), hair transplantation, wigs).  Id.

After Independence's denial of coverage, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC.")  Compl. at ¶ 10.  On February 14, 2024, the EEOC issued Plaintiff a Notice of Right to Sue.  Id. at Ex. A.  On March 12, 2024, Plaintiff filed her Second Amended Complaint, alleging the following claims against Independence Blue Cross:

1. Discrimination based on sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") (Count II);
2. Discrimination based on gender identity in violation of the Philadelphia Fair Practices Ordinance ("PFPO") (Count V);
3. Discrimination based on sex in violation of Section 1557 of the Affordable Care Act ("ACA") (Count VII); and
4. Discrimination based on disability in violation of Section 1557 of the ACA (Count VIII).

Plaintiff's alleged causes of action are devoid of any factual or legal basis for the reasons set forth below and should be dismissed.

## III.   ARGUMENT

### A.   Legal Standard

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead sufficient facts to state a claim for relief that is "plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  The plaintiff

must allege facts necessary to make out each element.  See Oakwood Lab'ys LLC v. Thanoo, 999 F.3d 892, 904 (3d Cir. 2021) (quoting Iqbal, 556 U.S. at 669, 679). "Conclusory allegations are insufficient to survive a motion to dismiss."  Harris v. St. Joseph's Univ., No. 13-3937, 2014 U.S. Dist. LEXIS 65452, *3 (E.D. Pa. May 13, 2014) (citing Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)).

> **B.    Plaintiff Cannot Bring Claims under Title VII or the PFPO Against Independence because Independence Is Not Plaintiff's Employer or an Agent of Plaintiff's Employer.**

Plaintiff's claims for sex and gender identity discrimination under Title VII and the PFPO against Independence fail because Independence is not and never has been Plaintiff's employer or an agent of her employer, the City of Philadelphia.

Title VII makes it an "unlawful employment practice for an *employer*…to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]"  42 U.S.C.S. § 2000e-2(a)(1) (emphasis added).  Likewise, the PFPO prohibits *employers* and labor organizations from denying or interfering with the employment opportunities of an individual based on the individual's sex, sexual orientation, gender identity, or disability, among other protected identities. Phila. Code § 9-1103 (emphasis added).

Essential to claims brought under Title VII and the PFPO is the establishment of an employment relationship between the plaintiff and the defendant.  In determining whether a party is an "employer" subject to Title VII, "[t]he Third Circuit generally focuses on which entity paid the employees' salaries, hired and fired them, and had control over their daily employment activities."  Binns v. Lynch, No. 16-03283(RBK),

7

2019 U.S. Dist. LEXIS 100429, at *8 (E.D. Pa. June 17, 2019) (citing <u>Nationwide Mut. Ins. Co. v. Darden</u>, 503 U.S. 318, 323 (1992) and <u>Faush v. Tuesday Morning, Inc.</u>, 808 F.3d 208, 213 (3d Cir. 2015)); see also <u>Butt v. Phila. Hous. Auth.</u>, No. 18-4770, 2024 U.S. Dist. LEXIS 25518, at *9 (E.D. Pa. Feb. 14, 2024) ("The PFPO is interpreted in the same way as Title VII."). In her Second Amended Complaint, Plaintiff pleads that she was employed by the City of Philadelphia for the past 28 years.  Compl. at ¶ 13. Nowhere does Plaintiff plead that Independence employed her or "had control over her daily employment activities."  <u>Faush</u>, 808 F.3d at 213.  As such, Plaintiff's Title VII and PFPO claims against Independence fail.  <u>See</u> <u>Ford v. Unum Life Ins. Co. of Am.</u>, 351 F. App'x 703, 706 (3d Cir. 2009) (finding plaintiff could not establish a Title VII discrimination claim against her insurance company because it was never her employer); <u>Messa v. Allstate Ins. Co.</u>, 897 F. Supp. 876, 883 (E.D. Pa. 1995) (dismissing Title VII and ADA claims where defendant was not plaintiff's employer).

Knowing that Title VII and the PFPO prohibits only *employers* from discriminating against their *employees*, Plaintiff attempts to circumvent this threshold issue by pleading that Independence is "an agent" and "corporate shell" of her employer, the City of Philadelphia.[3]  <u>Id.</u> at ¶¶ 61-62, 95-96.  Contrary to Plaintiff's conclusory allegations, however, courts in the Third Circuit have ruled that third-party administrators like Independence do not constitute "agents" of their members' employers for purposes of

---

[3] Although Plaintiff asserts these allegations in support of both her Title VII and PFPO claims against Independence, unlike Title VII, the PFPO does not include "agent" in the definition of "employer." <u>Compare</u> 42 U.S.C.S. § 2000e(b) ("The term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, *and any agent of such a person*) (emphasis added) <u>with</u> Phila. Code § 9-1102(f) ("Employer. Any person who employs one or more employees exclusive of parents, spouse or children, including the City, its departments, boards and commissions, but excluding any fraternal, sectarian, charitable or religious group."). As a result, Plaintiff cannot assert PFPO claims against Independence under an agency theory.

Title VII liability.  See Doe v. Pennsylvania, No. 1:19-CV-2193, 2021 U.S. Dist. LEXIS 61637, at *25 (M.D. Pa. Mar. 31, 2021) (affirming dismissal of a Title VII claim against the insurer because it was "not an agent of plaintiff's employer with respect to employment practices, but rather a provider or vendor of services" and doubting that "Congress intended Title VII liability to reach third-party private insurers"); Merritt v. Med. Disability Ins. Plan, No. 96-4495, 1998 U.S. Dist. LEXIS 23836, at *21 (D.N.J. Aug. 28, 1998) (finding the insurer could not be held liable under Title VII as an agent of plaintiff's employer where the employer did not influence or control the insurer's plan administration).  Similarly, other federal courts have reasoned that "offering or administering employee health plans is not enough by itself to make [an insurer] an agent of plaintiff's employer under Title VII." Boyden v. Conlin, No. 17-cv-264-wmc, 2017 U.S. Dist. LEXIS 191306, at *13 (W.D. Wis. Nov. 20, 2017); see also Milligan v. Greektown Casino, L.L.C., 2022 U.S. Dist. LEXIS 50516, at *6 (E.D. Mich. Mar. 21, 2022) (dismissing Title VII claims against a mere claims administrator because it was not an agent of the plaintiff's employer); Pappas v. Bethesda Hosp. Ass'n, 861 F. Supp. 616, 619 (S.D. Ohio 1994) ("[T]he administrator of a Title VII employer's benefits is not deemed to be an agent of the Title VII employer solely because it administers employee benefits for that employer.").  Nor could Independence, one of the largest health insurance companies in Pennsylvania, which provides third-party benefits administration to millions of people nationwide, be considered a "corporate shell" of the City of Philadelphia.

Accordingly, Plaintiff cannot bring claims against Independence under Title VII or the PFPO and Counts II and V of the Second Amended Complaint must be dismissed.

9

**C.    Plaintiff Fails to State a Claim under the PFPO because She Did Not Exhaust the Requisite Administrative Remedies.**

The PFPO provides that a private right of action under the Ordinance is available only to a person who (1) filed a complaint with the Philadelphia Commission on Human Rights ("PCHR") and (2) received notice from the PCHR of their right to sue. Phila. Code § 9-1122(1). "Courts have long held that as a matter of 'judicial administration . . . no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" <u>Mouzone v. Univ. of Pa. Health Sys.</u>, No. 23-19, 2023 U.S. Dist. LEXIS 194750, at *5 (E.D. Pa. Oct. 31, 2023) (quoting <u>Myers v. Bethlehem Shipbuilding Corp.</u>, 303 U.S. 41, 50-51 (1938)). The same is true for claims brought under the PFPO. <u>Smith v. RB Distribution, Inc.</u>, 498 F. Supp. 3d 645, 665 (E.D. Pa. 2020) ("[P]laintiffs may only exercise a private right of action after invoking the Commission's procedures and receiving notice from the Commission.")

Here, Plaintiff has not alleged that she attempted, let alone exhausted, the required administrative remedies under the PFPO. Plaintiff vaguely alleges that she "exhausted all applicable administrative remedies." Compl. ¶ 10. Yet, Plaintiff attaches only the EEOC's Notice of Right to Sue to her Second Amended Complaint. <u>Id.</u> at Ex. A. This Notice does not state that Plaintiff dual filed her Charge of Discrimination with the PCHR; nor does the Second Amended Complaint include any such allegations. As such, Plaintiff is foreclosed from pursuing her PFPO claims in this Court and Count V of the Second Amended Complaint must be dismissed. <u>Smith</u>, 498 F. Supp. 3d at 665.

**D.    Plaintiff's Claims under Title VII and the PFPO also Fail to Allege an Adverse Employment Action.**

Even if Plaintiff could bring claims for discrimination under Title VII or the PFPO against Independence, Plaintiff fails to state a claim under either of these statutes

10

because she does not allege an adverse employment action.  To state a claim for sex/gender discrimination under Title VII and the PFPO, a plaintiff must plead that (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) *she suffered an adverse employment action*; and (4) the adverse employment action occurred under circumstances that could give rise to an inference of intentional discrimination.  See Drummer v. Trustees of Univ. of Pennsylvania, 286 F.Supp.3d 674, 681 (E.D. Pa. 2017); Butt v. Phila. Hous. Auth., No. 18-4770, 2024 U.S. Dist. LEXIS 25518, at *9 (E.D. Pa. Feb. 14, 2024) ("The PFPO is interpreted in the same way as Title VII.").

Although Plaintiff has failed to allege many of these elements, common to both causes of action is Plaintiff's failure to plead an adverse employment action.  An adverse employment action must be an action by an employer that is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment."  Storey v. Burns Int'l Sec. Servs., 390 F.3d 760, 764 (3d Cir.2004).  "Not everything that makes an employee unhappy is an actionable adverse action."  Young v. St. James Mgmt., LLC, 749 F.Supp.2d 281, 296–97 (E.D. Pa. 2010) (quoting Smart v. Ball State Univ., 89 F.3d 437, 441 (7th Cir.1996)).  Only actions amounting to a "significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing a significant change in benefits" will constitute an adverse employment action.  Homel v. Centennial Sch. Dist., 836 F.Supp.2d 304, 323 (E.D. Pa. 2011).

Here, Plaintiff does not, and cannot, allege an adverse employment action under Title VII or the PFPO.  Indeed, Plaintiff is still employed by the City, and she alleges no

change in the status or conditions of her employment.  Plaintiff's only basis for all her

sex- and gender-based discrimination claims is the denial of coverage for cosmetic

surgeries that were not medically necessary under the terms of the Plan at the time of

the denial.  Compl. passim.  However, the administration of claims for health benefits in

accordance with Plaintiff's Plan, the terms of which Plaintiff alleges no change or loss

over the course of her employment, cannot constitute an adverse employment action.

Lee v. Univ. of Pa., No. 19-835, 2021 U.S. Dist. LEXIS 85858, at *28 (E.D. Pa. May 5,

2021) (finding a loss of insurance benefits in connection with termination may constitute

an adverse employment action).  Without a loss of benefits or other material change in

the terms and conditions of Plaintiff's employment, Plaintiff's discrimination claims under

Title VII and the PFPO fail.  Id.  To the contrary, it is clear from the Second Amended

Complaint that Plaintiff seeks to change the terms of her Plan through this action.  See

Compl. at ¶¶ 17-31.  Accordingly, Counts II and V of the Second Amended Complaint

must be dismissed.

     **E.**    **Plaintiff Fails to State a Claim for Sex or Disability Discrimination**
            **Pursuant to the Affordable Care Act.**

     Plaintiff fails to state a claim for sex or disability discrimination under section

1557 of the ACA, 42 U.S.C. § 18116.  "[W]hile Section 1557 does create a new private

right under the Affordable Care Act, the rights of action and corresponding remedies,

including all of their limitations, are to be drawn from the four federal civil rights statutes

listed in 42 U.S.C. § 18116(a) and applied depending upon the nature of the

discrimination alleged by a putative Section 1557 plaintiff."  SEPTA v. Gilead Scis., Inc.,

102 F. Supp. 3d 688, 699 n.3 (E.D. Pa. 2015).  Thus, to succeed on her claim, Plaintiff

must plead: (1) discrimination prohibited by Title VI of the Civil Rights Act of 1964, 42

U.S.C. § 2000d (discrimination on the basis of race, color, or national origin); Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 (discrimination on the basis of sex); the Age Discrimination Act of 1975, 42 U.S.C. § 6101 (discrimination on the basis of age); or Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (discrimination on the basis of disability); and (2) discrimination by a "health program or activity, any part of which is receiving Federal financial assistance . . . ."  42 U.S.C. § 18116(a). Plaintiff has brought her two ACA discrimination claims pursuant to Title IX (sex discrimination) and the Rehabilitation Act (disability discrimination).  Compl. at ¶¶ 115-142.

Assuming for the purposes of this Motion only that this case involves a "health program or activity…receiving Federal financial assistance," Plaintiff's ACA claims fail because Plaintiff does not allege any acts of intentional discrimination based on sex or disability, as is required by the ACA.  Plaintiff merely makes conclusory allegations of discrimination because Independence did not cover Plaintiff's FFS, hair transplant surgery, and related procedures because Independence deemed the procedures to be cosmetic and not medically necessary.  Compl. at ¶¶ 38-39.  Plaintiff's claim for coverage does not equate to discrimination under the law.  Because Plaintiff cannot make a claim for discrimination based on either sex under Title IX or disability under the Rehabilitation Act, Counts VII and VIII of the Second Amended Complaint must be dismissed.

### 1. Plaintiff Has Not Alleged Any Intentional Acts of Sex-Based Discrimination.

To successfully bring a claim under Title IX, Plaintiff must allege, at minimum, that she was discriminated against on the basis of her sex or gender.  <u>McRae v. Sch.</u>

Reform Comm'n, No. 17-4054, 2018 U.S. Dist. LEXIS 152364, at *18 (E.D. Pa. Sep. 6, 2018).  Title IX also requires that the discrimination be intentional.  Williams v. Pennridge Sch. Dist., No. 15-4163, 2018 U.S. Dist. LEXIS 205957, at *16 (E.D. Pa. Dec. 4, 2018) ("If a plaintiff is unable to prove intentional discrimination on the basis of… sex, then the plaintiff's claims under…Title IX…must fail.") (citations omitted); see also Doe v. Miami Univ., 882 F.3d 579, 589 (6th Cir. 2018) (a Section 1557 claim under Title IX must allege "sufficient factual allegations to satisfy Twombly and Iqbal in alleging the required element of discriminatory intent."); Weinreb v. Xerox Bus. Servs., No. 16-cv-6823 (JGK), 2020 U.S. Dist. LEXIS 132134, at *7-8 (S.D.N.Y. July 27, 2020) ("[D]isparate impact claims on the basis of sex are not cognizable under Section 1557.") (citing Condry v. UnitedHealth Grp., Inc., 2018 U.S. Dist. LEXIS 111233, 2018 WL 3203046, at *4 (N.D. Cal. June 27, 2018)); Briscoe v. Health Care Serv. Corp., 281 F. Supp. 3d 725, 738 (N.D. Ill. 2017) ("Title IX's enforcement mechanism applies to Plaintiffs' [Section 1557] sex discrimination claim, so their claim fails because Title IX does not allow disparate-impact claims.")).

   For example, in Weinreb, the husband-and-wife plaintiffs alleged that the defendants discriminated against the wife on the basis of sex by denying her coverage of certain medications, thereby violating various laws, including section 1557 of the ACA.  Weinreb, 323 F. Supp. 3d at 521.  Specifically, the plaintiffs alleged that Caremark's exclusion of coverage of the wife's treatments discriminated against females who, unlike males, can suffer from global diffuse adenomyosis (an extremely painful disease affecting a woman's uterine tissue).  Id. at 506.  Though "sympathetic to Plaintiff's painful plight," the court found that the plaintiffs' complaint did not allege facts

14

sufficient to find that Caremark intentionally discriminated against the wife because of her sex.  Id. at 510, 515.  More specifically, the court found that the plan did not cover the relevant medications for either males or females (absent treatment for cancer) and thus defendants' coverage denial did not suggest any sex-based discrimination.  Id. at 517 ("The administrator's refusal to cover fentanyl had nothing to do with the fact that Mr. Weinreb is a male employee and his wife is female: Caremark's differentiation between cancer and non-cancer patients is wholly unrelated to sex.").  Moreover, plaintiffs' ACA claim was dismissed because "Plaintiffs only [made] conclusory assertions that relate[d] to Defendants' failure to cover [the wife's] medications" and alleged "no facts to support a finding that Caremark intentionally discriminated against [plaintiffs]."  Id. at 521.

In the instant case, Plaintiff likewise fails to allege intentional sex-based discrimination.  She alleges that she "has been wrongfully subject to discrimination by Defendant, Independence Blue Cross, because of her sex."  Compl. at ¶ 129.  Her support for this alleged discrimination lies in the mere fact that Independence denied Plaintiff's request for coverage for FFS, hair transplant, and related procedures (id. at ¶ 43), including "rhinoplasty, septoplasty, septorhinoplasty, dermabrasion for rhinophyma, forehead reduction, repair of brow ptosis (supraciliary, mid-forehead or coronal approach), and…hair transplant procedures." (id. at ¶ 16).  But in reality, the Plan does not cover these cosmetic procedures for any person, regardless of gender or gender identity, "unless medical necessity demonstrating a functional impairment can be identified."  Ex. 1 at p. 4. As the Medical Policy Bulletin clearly explains, such services "are a benefit contract exclusion for all products of [Independence] and, therefore, not

eligible for reimbursement consideration."  Id.  Thus, like Weinreb, no individual, regardless of gender or gender identity, would be reimbursed for these procedures to otherwise change the individual's physical appearance.  See id. at 34.  Indeed, the Plan would pay only if the procedures correct a "condition resulting from an accident" or a "functional impairment which results from a covered disease, injury or congenital birth defect."  Id.  Thus, the denial for coverage of the procedures sought by Plaintiff has no connection to Plaintiff's gender or gender identity and cannot provide the basis of a discrimination claim under section 1557 of the ACA.

The case of Polonczyk v. Anthem Blue Cross BlueShield, 586 F. Supp. 3d 648 (E.D. Ky. Feb. 23, 2022) is particularly instructive in this analysis.  In Polonczyk, the plaintiff was also a transgender female whose insurance plan, like the Plan in the instant case, generally covered procedures, treatments, and related services designed to alter a participant's physical characteristics from his or her biologically determined sex to those of another sex.  Id. at 650.  However, the Polonczyk plaintiff submitted a pre-certification request for facial surgery that was denied because the cosmetic surgeries she requested were defined in the plan as "medically unnecessary."  Id. at 653.  The plaintiff sued Anthem under ERISA and the ACA.  Regarding her ACA claim, the court held that the plaintiff failed to "identify any documents or actions that support a finding that Plaintiff was discriminated against because of her transgender status."  Id. at 656 (emphasis added).

The Polonczyk court further found that the plaintiff's allegations, even when read in connection with the plan document, did not "plausibly allege intentional discrimination."  Id. at 656.  The Polonczyk plaintiff claimed that the plan categorically

excluded medically necessary surgeries for patients who had undergone or were planning to undergo gender reassignment surgery, and that this drew a "classification that discriminates based on transgender status and gender nonconformity."  Id.  The court, however, rejected the plaintiff's argument, stating: "[t]he Plan itself categorizes certain surgeries as cosmetic, regardless of a participant's status as a transgender or non-transgender individual."  Id.  The plan stated that cosmetic surgery "primarily for the purpose of changing the appearance of any part of the body to improve appearance or self-esteem" would not be covered and that exclusion applied to every plan participant regardless of sex.  Id.  Thus, the court held: "Given the Plan's limited allowance for any cosmetic procedures, regardless of a participant's status as a transgender or non-transgender individual, it cannot be inferred that by simply denying benefits to Plaintiff, Defendants were intentionally discriminating on the basis of sex."  Id. at 657 (emphasis added).  The court, therefore, dismissed the plaintiff's complaint in full.

Independence's Medical Policy Bulletin states that "services that are cosmetic, following medical necessity review, are a benefit contract exclusion for all products of the Company and, therefore, not eligible for reimbursement consideration."  Ex. 1 at p. 4.  This Court should follow the Polonczyk court's holding, finding that it cannot infer that Independence intentionally discriminated on the basis of sex simply because Independence denied benefits to Plaintiff because the exclusions here, like the exclusions in Polonczyk, apply "to every Plan participant, regardless of their sex."  586 F. Supp. 3d at 656-57.

In contrast, this case is nothing like other cases involving categorical exclusions of treatment for gender dysphoria, in which courts have found that the exclusion was

17

discriminatory.  For instance, in the case of <u>C.P. v. Blue Cross Blue Shield</u>, the insurance policy at issue contained exclusionary language providing that transgender reassignment surgery was not covered at all, unless it was considered medically necessary for a diagnosis *other than for gender-affirming care*.  536 F. Supp. 3d 791, 796 (W.D. Wash. 2021) (emphasis added).  The Washington District Court denied defendant's motion to dismiss, holding that plaintiff provided enough factual support to allege that this carve-out constituted intentional discrimination due to plaintiff's sex, thus properly stating a claim of sex discrimination under Section 1557.  <u>Id.</u> at 797.

Similarly, in <u>Hammons v. Univ. of Md. Med. Sys. Corp.</u>, the Maryland District Court recently found that a hospital's blanket policy of denying gender-affirming treatment for transgender patients (specifically, a hysterectomy that was cancelled for a transgender man because it was intended to treat his gender dysphoria) violated Section 1557 because it was discrimination on the basis of sex.  No. DKC 20-2088, 2023 U.S. Dist LEXIS 2896, *15 (D. Md. Jan. 6, 2023).  As the court there stated:

> …the policy at issue here is not a neutrally-applicable prohibition on all hysterectomies, or even a prohibition on hysterectomies for the purpose of elective sterilization—it is a prohibition on hysterectomies (along with other gender-affirming surgeries) that are sought by transgender patients for the purpose of treating gender dysphoria…Thus, the true basis for Defendants' refusal to perform the surgery was Mr. Hammons's transgender status.

<u>Id.</u> at *16-17.

Plaintiff attempts to analogize this case to <u>Doe v. Independence Blue Cross</u>, which is inappropriate.  No. 23-1530, 2023 U.S. Dist. LEXIS 209063, at *11 (E.D. Pa. Nov. 21, 2023).  When the <u>Doe</u> court, on a motion to dismiss, was reviewing an appeal determination letter by an Independent Review Organization (IRO) unaffiliated

with Independence, the court was troubled by the language used by the IRO.  This language, which noted the IRO's impression of the facial characteristics of the plaintiff, went above and beyond the medical policy and used language not found in the plan design or the medical policy.  As such, the court was concerned and questioned whether the denial was based on "the personal impression of whether or not you look female."  Id. at *12.  Consequently, the court could not determine whether the plaintiff had sufficiently pled discrimination.  Plaintiff here has not alleged and cannot allege that the denial in this instance was based upon any "impression" or "perception" of Plaintiff.  Plaintiff's Second Amended Complaint alleges only that Independence denied coverage because Plaintiff was seeking to "improve her appearance" absent documentation of a "functional impairment" in accordance with the Plan.  Compl. at ¶¶ 140-141.

Furthermore, in all these cases, the courts found the exclusions in coverage were discriminatory because they were explicitly based on sex.  However, in the instant case, there is no such categorical exclusion for treatment of transgender patients or patients with GD.  In fact, the operative Plan covered many procedures for the treatment of GD and excluded coverage for cosmetic procedures for all members of the Plan absent certain functional impairments.  Because Plaintiff has not (and cannot) state a claim for intentional discrimination based on sex, Count VII of the Second Amended Complaint must be dismissed.

### 2.  Plaintiff Has Not Alleged Any Acts of Disability-Based Discrimination.

For similar reasons as set forth above, Count VIII of Plaintiff's Second Amended Complaint, asserting discrimination based on disability in violation of the ACA, should

19

be dismissed.  To state a claim of disability discrimination under the ACA, a plaintiff must satisfy the elements of Section 504 of the Rehabilitation Act by demonstrating that she is (1) a qualified individual with a disability (2) who was denied the benefits of a program or activity which receives federal funds (3) on the basis of her disability. SEPTA v. Gilead Scis., Inc., 102 F. Supp. 3d 688, 699 (E.D. Pa. 2015) (citing Calloway v. Boro of Glassboro Dep't of Police, 89 F. Supp. 2d 543, 551 (D.N.J. 2000)).

Assuming, for the purpose of this argument only, that Plaintiff is a qualified individual with a disability (GD), and that the Plan could be deemed a "program or activity which receives federal funds," Plaintiff has not alleged any facts sufficient to show that she was denied coverage because of her disability.  Instead, Plaintiff simply concludes that her request for coverage was "denied on account of discrimination due to Ms. Doe's gender-dysphoria disability."  Compl. at ¶ 141.  Moreover, under the Rehabilitation Act, a plaintiff's disability must be the sole cause of the discriminatory action.  Furgess v. Pa. Dep't of Corr., 933 F.3d 285, 291 n.25 (3d Cir. 2019) (citations omitted).  Plaintiff has not presented any evidence that Independence denied her claim due to her GD, much less that it was the only factor contributing to the denial of her claim.  To the contrary, as set forth more fully above, the operative Plan covers many procedures for the treatment of GD and excludes coverage for cosmetic procedures for all members of the Plan absent certain functional impairments.  Thus, Plaintiff's claim for disability discrimination fails and Count VIII of the Second Amended Complaint must be dismissed.

IV.     **<u>CONCLUSION</u>**

For the foregoing reasons, Defendant Independence Blue Cross respectfully requests that this Court grant its Motion to Dismiss and enter the proposed Order attached hereto dismissing Plaintiff's Second Amended Complaint in its entirety, with prejudice, as to Independence.

Respectfully submitted,

**TUCKER LAW GROUP, LLC**

Date: June 3, 2024            /s/ Joe H. Tucker
                            Joe H. Tucker, Jr., Esquire
                            Nancy Fisher Onaderu, Esquire
                            Ten Penn Center
                            1801 Market Street, Suite 2500
                            Philadelphia, PA 19103
                            (215) 875-0609
                            Attorneys for Defendant,
                            Independence Blue Cross

21

<u>**CERTIFICATE OF SERVICE**</u>

I, Joe H. Tucker, Esquire hereby certify that on this date, a copy of the foregoing document was electronically filed through the Court's ECF System, which automatically generates a notice of filing that will be sent to all counsel of record and grant access to this filing through the Court's system, thereby serving it upon all parties.

**TUCKER LAW GROUP, LLC**

Date:  June 3, 2024                    <u>/s/ Joe H. Tucker          </u>
                                       Joe H. Tucker, Esquire